WISCONSIN MUTUAL LIABILITY COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Appellants.

*May 6—June 3, 1924.*

*Workmen's compensation: Death of minor: Dependency of parents: Earnings of minor less than cost of support: Future contributions.*

1. To justify an award of compensation under the workmen's compensation act to parents for the death of their child, present dependency of the parents upon the child must be shown as a matter of fact. p. 205.
2. Dependency such as will justify an award exists only when the amount contributed by the child during the preceding year exceeds the cost of his support for that year. p. 204.
3. Where the cost of the support of a minor child exceeded his contributions the compensation act was inapplicable. There being no present dependency, no award could be made for his death, nor could burial expenses provided by the act be imposed on his employer; and since there were no present losses there can be no award for future losses. p. 204.
   CROWNHART, J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action to test the validity of an award made by the *Industrial Commission.* Frederick Baldus, a son of the defendant *Baldus,* was accidentally killed while in the employ of the *Sentinel Company.* The evidence showed that the Baldus family consisted of father, mother, and four children, all of whom contributed sums ranging from $60 to $122.35 the preceding year to the family fund. Frederick, under the most liberal estimate the evidence would warrant, contributed $122.35. The most conservative estimate of the annual cost of his support was $188. The *Industrial Commission,* evidently relying upon sub. (4) (c), sec. 2394—9, Stats. 1921, reading: "Where, by reason of minority, sickness, or other causes during such year, the foregoing basis is unfair or inadequate, the death benefit shall be such sum

as the commission may determine to be fair and just, considering the death benefits allowed in other cases where such untoward causes do not exist," awarded $800 to the father, $800 to the mother, and $100 for burial expenses. The trial court set aside the award because no dependency was shown, and the defendants appealed.

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the *Industrial Commission,* and *Glicksman, Gold & Corrigan* of Milwaukee, attorneys for *Joseph J. Baldus* and *Anna Baldus,* and oral argument by *Mr. Levitan* and *Mr. Walter D. Corrigan.*

For the respondents the cause was submitted on the brief of *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr,* of counsel, all of Milwaukee.

VINJE, C. J.   The constitutionality of that part of the section above quoted was argued, but we express no opinion upon that subject because it is not involved in this case. The dependency of parents upon their children must be shown as a matter of fact in each case. The law does not infer it. *Wisconsin D. Co. v. Industrial Comm.* 161 Wis. 42, 152 N. W. 460. And dependency exists only when the amount contributed by a minor child the preceding year exceeds the cost of his support for such year. *Milwaukee B. Co. v. Wiecki,* 173 Wis. 391, 396, 181 N. W. 308. Here the cost of support exceeded the minor's contribution, hence there was no dependency. The parents suffered no present financial loss by his death. The workmen's compensation law was enacted for the purpose of in a measure making good present financial losses and future losses for a limited time based upon present losses. Where there are no present losses there can be no award for future losses. As was aptly said by the trial judge in his opinion, "This is the fundamental feature that distinguishes the award under the compensation act from damages under the common

law."  The argument, therefore, of the attorney general to the effect that the minor's death would cause future losses to the parents is beside the question.  Present dependency must be shown before any provision of the compensation act can be invoked.  In this case, under the rule adopted by this court in *Milwaukee B. Co. v. Wiecki,* 173 Wis. 391, 181 N. W. 308, there was no present financial loss to the parents and therefore the compensation act does not apply to the case at all.  Since it does not apply to the case, it follows that no burial expenses provided for by the act can be imposed upon the employer.  Such burial expenses can be imposed only where the act is called into operation by dependency or otherwise.

*By the Court.*—Judgment affirmed.

CROWNHART, J. (*dissenting*).  The compensation act was passed in 1911.  It was an innovation with reference to liability for industrial accidents.  Common-law liability in such cases depended upon negligence without contributory negligence or assumption of risk on the part of the injured workman.  It had been found to be unjust, inadequate, and expensive.  The compensation act was a substitute therefor, and to establish a more equitable system for relief to injured workers.  It was a great humane piece of legislation, and has become firmly established in practically all the states of the Union since Wisconsin led the way.  As might be expected, the act was experimental in its early stages, and has received a great many amendments to perfect it in order to carry out the purposes of its authors.  The *Industrial Commission,* created to administer the law, obtained experience under the law that proved valuable in determining the necessary amendments to it.

One of the provisions of the law was to the effect that where an employee received an industrial accident resulting in death, his dependents were entitled to not to exceed four times his earnings during the year preceding his death.  It

soon became evident to the *Industrial Commission* that by reason of minority, sickness, or other causes that basis was often unfair or inadequate. This was brought home to the *Industrial Commission* most forcefully in reference to minority in the case of a boy who was killed at Portage by an industrial accident. The mother of the boy was a widow, and she had kept the boy in school under conditions of much privation to her because she was poor and without sufficient income. When he arrived at the age of sixteen she found employment for him and depended upon him to assist her in her declining years. The second day of his employment the boy was killed, and the case came before the *Commission.* Under the law as it then stood the *Commission* was unable to render any relief to the mother because the boy had earned nothing and had contributed nothing to her support during the year preceding his death. This, with many other similar circumstances, led the *Commission* to prepare an amendment to the law, which reads as follows:

Section 2394—9 (4) (c). ". . . Where, by reason of minority, sickness, or other causes during such year, the foregoing basis is unfair or inadequate, the death benefit shall be such sum as the commission may determine to be fair and just, considering the death benefits allowed in other cases where such untoward causes do not exist."

This amendment was presented by the *Commission* to the legislature, with a full explanation of its necessity. The legislature promptly adopted the amendment and it became a part of the law. Thereafter the *Industrial Commission* administered the law to provide that in cases of minority, where the old basis was unfair or inadequate, the death benefit was fixed at such sum as was found to be fair and just considering the death benefits allowed in other cases where such untoward causes did not exist. In other words, the law provided, and the *Commission* held, that where a minor, because of minority, was earning less or contributing less than he would have been able to earn or contribute if

it had not been for his minority, then the death benefit should be based on what he might have been reasonably expected to earn and contribute to his dependents if he had been of full earning capacity.

In *Milwaukee B. Co. v. Wiecki,* 173 Wis. 391, 181 N. W. 308, decided in February, 1921, the court went beyond the facts in that case to hold that—

"We are of the opinion that where, as here, a minor contributes his earnings to his family with whom he resides, so much thereof as is actually needed and necessarily used for his individual care and support from the general family purse is to be treated as a sum used for his individual support rather than as a contribution by him of the same amount to the support of his dependents under the statute above quoted."

Now, in the instant case, this court has extended that doctrine and has laid down the rule: "Dependency exists only when the amount contributed by a minor child the preceding year exceeds the cost of his support for such year." And as applied to the facts in the case, it is held that a boy thirteen years of age, working part time and going to school, who earned $122.35 and contributed the same to his parents during the year preceding his death, and whose upkeep amounted to $188 during such year, furnished nothing to the support of his parents, and they, therefore, were not dependent upon him and were entitled to nothing by way of death benefit under the compensation act.  It seems too plain for argument that the court has read out of the compensation act the amendment heretofore quoted, and has put the law back on the old basis which proved so unjust and inequitable.  The rule established by the legislature is plain and unequivocal.  If, by reason of minority, an employee is unable to contribute to the family support what he otherwise might reasonably be expected to contribute were it not for his minority, the legislature has plainly said that the *Industrial Commission,* in fixing death benefits,

shall fix them at such sum as the *Commission* may determine to be fair and just considering the death benefits allowed in other cases where minority does not exist.

The court has reached its present decision, to my mind, under a wholly mistaken view of the law.  It first determines that there was no dependency because there was no net contribution.  Clearly this is wrong, in the ordinary acceptation of the word "dependency."  A farmer sows his crops and depends upon the growing crops to pay the mortgage and keep the family during the ensuing year.  Until harvest time he has had no contribution.  It has all been outgo.  But there was a dependency that kept him on the job—that gave him faith in the future,—and on that dependency he might reasonably rely.  So the merchant.  He buys a stock of goods and depends on future sales for the support of his family and to pay his bills.  The dependency is justified for the future just as much as it was in the past.  In other words, can it be doubted that there may be dependency without contribution, the same as there may be contribution without dependency.  Certainly the legislature recognized that such was the case.  It shocks the sensibilities of mankind to say that poor parents, raising a large family of children, may not depend on the children as they grow older to return in a measure the heavy expense of their early childhood.  The duties of parents and children are reciprocal.  It is a fact that among poor people the children do reward their parents for their early sacrifices, and the parents do depend upon their children for such assistance.

The amendment to the compensation law quoted was intended by the legislature to meet the exact situation presented to us in this case.  It was known to the legislature that a minor employee might, by reason of his minority, be unable to earn a wage that would permit him to contribute to the family support over and above his keep.  It was known to the legislature that many boys and girls were apprenticed in order to learn a trade, and that during their

apprenticeship their wages were very small.   But it was likewise known to the legislature that poor parents depend upon such children and make every sacrifice to secure for them an education in a trade or profession in order that they might have their assistance later on.   Parents even mortgage their homes to procure an education for their children, with the full expectation that the children will assist in lifting the mortgage when they become capable of earning a full wage.   The court has overlooked the manifest purpose of the amendment.   It has overlooked the real reason for adopting this amendment.   The legislature intended to give relief from an intolerable situation.   The situation shocked the conscience of all who understood it. And the court has taken away the legislative relief intended. In other words, the whole unfair and unjust system which the legislature sought to cure is restored in its primacy.   I think the court has been wholly misled as to the purposes and intent of the legislation in question and that the result of its decision is most unfortunate.

The great majority of children who, like the Baldus boy, are engaged in one form or another of day labor, are children of the working classes, who, more than all others, must be looking forward to the day when these same children will take over a large part of the burden of the parents.   It does not require statistics to prove that they do not earn an adult's wage, even if they work the limit of permissible hours fixed by statute, and if because of their minority or limitations of hours they cannot earn sufficiently to make it possible for them to contribute something in excess of the cost of their board and keep, these parents will be subjecting their children to all the hazards of industry without shadow of the right accorded the dependents of other workers.

In the year 1923 the *Commission* issued regular permits to each of 8,552 children who were less than seventeen years of age and over fourteen.   Regular permits are issued for employment during the school year.   There were during

that same year a large number of children to whom like permits had been issued during previous years and which were still effective because the child had not reached the age of seventeen years, probably at least half as many as there were new permits issued during that year. Such of these children as were over sixteen years of age were required by law to go to vocational school one day per week, and those between fourteen and sixteen years were required to go to vocational school three days per week. This requirement for school interfered very largely with the earning ability and, in the case of the fourteen to sixteen year old child, reduced his earnings below the point where it can be reasonably expected that he would make contributions to support in excess of his keep. During that same year the *Commission* issued vacation and after-school permits to each of 10,713 children. These permits were issued to children who are continuing their school work, but do labor in the summer vacation and after school. The jobs they get are not very remunerative. In the city of Milwaukee there were 4,200 active street-trade permits outstanding. For the state outside of Milwaukee there is probably as large a number of boys engaged in carrying papers and handbills. With rare exception their earnings are just such as we have in this case, and little or no chance of contributing to their parents in excess of their maintenance cost. This was the background that prompted the legislative attempt to protect parents of such children in case of fatal accident.

It is this situation that makes the decision of the court so shocking. There are thousands of children at work at dangerous occupations which are brought under the compensation law whose dependents are deprived of all compensation by this decision. Common-law liability is taken away by the compensation act, and by wiping out the amendment there is nothing to take the place of common-law liability.

The holding of the court as to burial expense is equally

hard for me to understand. Prior to 1917 the provision read as follows:

"If the deceased employee leaves no person dependent upon him for support, and the accident proximately causes death, the death benefit shall consist of the reasonable expense of his burial, not exceeding $100."

It will be noted that up to that time the burial expense was paid only in those cases where there was no dependency. The legislature then used the expression "death benefit" as descriptive of burial expense in spite of the fact that there were no dependents. In 1917 the legislature determined that burial expense ought to be paid in all cases and modified the statute accordingly. The only change since 1917 was the increase provided by the 1923 legislature from $100 to $200.

Certainly when one takes into account the wording of this statute prior to 1917, he is forced to the conclusion that the term "death benefit" as used by the legislature contemplated burial expense in all cases, and is not influenced at all by reason of the fact that there were no dependents.

For the reasons stated I respectfully dissent.