Zurich General Accident and Liability Company, Ltd., and another, Appellants, vs. Industrial Commission of Wisconsin and others, Respondents.

*October 15—November 8, 1927.*
*March 31—June 18, 1928.*

For the appellants there was a brief by *Glicksman & Gold*, attorneys, and *Ray T. McCann*, of counsel, all of Milwaukee, and oral argument by *Mr. McCann*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Michael J. Dunn, Jr.*, assistant attorney general, and oral argument by *Mr. Dunn*.

The following opinion was filed November 8, 1927:

DOERFLER, J. The deceased was employed by the Hartman Furniture & Carpet Company (hereinafter called the company) as a rug picker. The building of the company was nine stories in height, and the various floors were connected by two freight elevators, one on the north side of the building and the other on the south side. In addition to these freight elevators there was also a passenger elevator. It was the duty of the deceased, together with several other employees of the company, to pick from a stack of rugs contained on the second floor the rugs that had been sold during the day, to then bundle and tie them and carry them to the north freight elevator, so they might be conveyed to the first floor, preparatory to their shipment. It appears clearly from the evidence that it was the duty of the pickers, of which the deceased was one, to deposit the picked rugs upon the elevator.

The north elevator, upon which the accident occurred, was equipped with an iron door, which, according to the testimony, was open and remained open when the elevator arrived at a given floor. The elevator was also equipped with a wooden safety gate about four feet high, which was operated automatically with the elevator, and this gate, when the elevator reached a given floor, ascended so as to permit employees and others to go into and out of the elevator. When, however, the elevator had passed a given floor, the gate automatically descended and acted as a guard to prevent persons from falling into the elevator shaft.

It was testified to by one Chic, the foreman of the pickers, that about fifteen minutes before the accident happened he requested one Anderson to operate the passenger elevator to the ninth floor, from which he was directed to convey a number of rugs down to the first floor for shipment; that upon this occasion he expressly cautioned the deceased to keep off of the elevators. A short time after this alleged caution was given, the deceased, who had conveyed a bundle of picked rugs to the north elevator, was seen by one of the employees of the company leaning over the wooden gate, and immediately thereafter such employee observed that the deceased was crushed between the floor of the elevator and the ceiling of the second floor.

No witness at the hearing before the Industrial Commission could testify as to the manner in which the accident occurred. Whether the deceased was conveyed upward by the automatic movement of the wooden gate, or whether he actually stepped onto the moving elevator, or whether he fell onto the platform of the moving elevator while the wooden gate was ascending, is left unexplained as far as the evidence in the case is concerned. Furthermore, none of the witnesses could testify positively whether the elevator was operated by the regular elevator operator, or whether it had been set in motion by the deceased in an effort to manipulate the cables. Certain it is that if the regular elevator operator was present that night he was not produced as a witness, and the testimony of the employees of the company is merely to the effect that they did not see the operator upon the elevator that night. Under the facts as detailed the Commission found that Benish lost his life while he was performing services growing out of and incident to his employment, and the correctness of this finding is strenuously attacked by counsel for the plaintiffs herein.

It is argued that it was outside of the scope of his employment for Benish to place the rugs upon the elevator, and yet

the evidence of employees, some of whom were of rather high rank in the company, discloses that it was the duty of the pickers not only to convey the rugs to the elevator but to place them onto the elevators. There was no witness who could testify that the cables had been operated by Benish. The nearest approach to a situation from which it might be inferred that Benish did operate the cables must be based upon the testimony of one Sauer, an employee, who while occupying a position about twelve feet distant from the elevator claims to have observed Benish leaning over the wooden gate into the elevator shaft. From this testimony the inference might as logically be drawn that Benish when he leaned over the gate attempted to ascertain the whereabouts of the elevator, as to infer that he had actually operated the cables. Furthermore, it is a logical inference that Benish's object was to remain at the elevator shaft until the elevator arrived, so as to enable him to deposit the bundles of rugs upon the platform thereof. But whether Benish had done the one thing or the other, the services he performed were for the benefit of the company and grew out of his employment and were incident thereto. *Frint Motor Car Co. v. Industrial Comm.* 168 Wis. 436, 170 N. W. 285.

This case in its facts is somewhat similar to the case of *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, 183 N. W. 168. The distinguishing feature, however, between the two cases consists of the fact that in the instant case the employee, if he violated an express warning, nevertheless performed or attempted to perform services for the benefit of his employer, the company, while in the *Rutzinski Case, supra,* it was clear that the employee when he was injured was performing services not for the benefit of his employer but for his own individual benefit. The inference which the Commission drew in this case was a logical inference, which it had a right to draw; it was based upon the physical situation existing and upon facts established by the

evidence. Under such circumstances the Commission's inference and findings are conclusive and cannot be disturbed. *Lewis v. Industrial Comm.* 178 Wis. 449, 190 N. W. 101; *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 199 N. W. 159; *Milwaukee Western F. Co. v. Industrial Comm.* 159 Wis. 635, 150 N. W. 998.

Counsel for the company also contend that the evidence does not sustain a finding of partial dependency. Sec. 102.09 (4a), being the statute on dependency, reads as follows:

"In case the deceased employee leaves no one wholly dependent upon him for support, but one or more persons partially dependent therefor, the death benefit shall be such sum as the commission shall determine to represent fairly and justly the aid to support which the dependent might reasonably have anticipated from the deceased employee but for the accident, considering their physical surroundings and conditions. . . ."

The deceased was a youth sixteen years of age, weighing about 180 pounds. He was strong, energetic, and industrious. He was a high school student, in the second year of his course. For several years prior to his death, and while attending school, he occupied his spare time in working for a druggist, for which he received the sum of $8 per week. During vacation time he earned in such employment the sum of $12 per week. While working for the company he earned the sum of $12.50 per week. The award of the Commission was based upon the weekly wage which the company agreed to pay him, which was $12.50, amounting to $650 per year. From the latter sum there was deducted $350, which was the amount found by the Commission as the cost to the parents of Benish's annual support. All of the wages received by Benish were promptly paid to his parents. The Commission also found that out of the earnings of $650 per year the sum of $300 represented fairly and justly the aid for one year which the dependents might rea-

sonably have anticipated from the deceased but for the accident, considering their physical surroundings and conditions.

There was some conflict in the evidence with respect to the actual amount of the cost of the support of the deceased. The father's estimate was larger than that of the mother. There is, however, evidence in the case from which the Commission could readily find that the cost of the support was somewhat less than $350, and while the Commission could readily have found a larger sum, nevertheless we are not prepared to say that the Commission's finding is not based upon credible evidence. The parents had four children, the youngest of whom was seven years of age, and the oldest, being the deceased, sixteen years of age. Outside of the father, Benish was the only member of the family who was earning money and contributing something to its support. The father was a fruit peddler, earning about $35 per week. He was the owner of a piece of property at No. 711 Harmon street, in the city of Milwaukee, which he had purchased for the sum of $6,500, and which was incumbered by a mortgage in the sum of $6,000. His equity in this property, therefore, is represented by the sum of $500. This property yielded a monthly rental of $25. He also owned the property located at No. 741 Seventeenth street, in said city, which he had purchased for the sum of $13,500, and which was incumbered by a mortgage of $7,000, leaving his equity in the property the sum of $6,500. This property yielded a monthly rental of $53, and a part of this property was occupied by him for residence purposes. His total equity in both properties amounted to $7,000. The total incumbrances on the properties amounted to $13,000. No testimony having been introduced as to the rate of interest which the father was obliged to pay upon the incumbrances of $13,000, we must assume that he paid the legal rate of interest, being six per cent. Out of the rentals received he was obliged to

expend the sum of $780 in interest payments. When we add to this last named sum the amount of the taxes, insurance, repairs, and occasional losses resulting from the property remaining vacant, or from failure of tenants to pay their rent, it becomes apparent that the annual income from the properties, which amounts to $936, will not be sufficient to pay the expenses, unless we take into consideration also the fact that he derived a benefit from a part of this property because he used it for residence purposes.

Considering the condition of the property, in view of the incumbrances, the earnings of the father from his business, the size of the family, the ages of the children, and all the other physical facts surrounding the case, it becomes apparent that the Commission's finding of partial dependency was grounded upon a logical basis. True, the family might have been supported without the aid of the deceased's contribution,—at least some kind of an existence might have been eked out; but when we consider modern economic conditions, the requirements of the statutes in respect to compulsory education, the modern standard of living, and the decreased purchasing price of the dollar, the aggregate of the father's available funds is rather modest. The award of the Commission was based upon the earnings of the deceased while in the employ of the company, and there was deducted therefrom the cost of Benish's support. How could it be reasonably said from the testimony in this case that the parents might not have reasonably *anticipated* a contribution of $300 per year by Benish to the support of the family? The finding of the Commission is not based upon conjecture, but upon actual earnings, and it was for the Commission to determine from all the facts and circumstances in the case, and especially upon the amount earned in previous years, and also the amount earned as wages from the company, what aid to support Benish would contribute.

*Wisconsin Drainage Co. v. Industrial Comm.* 161 Wis. 42, 152 N. W. 460; *Ronning v. Industrial Comm.* 185 Wis. 384, 200 N. W. 652.

Sec. 102.09 (7) (a) of the Statutes provides as follows:

"When the injury is sustained by a minor illegally employed, compensation and death benefits, as provided in sections 102.03 to 102.35, shall be as follows:

"(a) Double the amount otherwise recoverable, if the injured employee is a minor of permit age, and at the time of the accident is employed, required, suffered or permitted to work without a written permit issued pursuant to section 103.05, except as provided in paragraph (b)."

It is conceded that Benish did not have a permit. At the time of his employment he represented himself as being over eighteen years of age. The parents of Benish made no representations whatever to the employer, and they were not even present when the false representations were made. There is no evidence in the case that the parents knew that their deceased son had made false representations to the employer. These facts sharply distinguish the instant case from the case of *Stryk v. Mnichowicz,* 167 Wis. 265, 167 N. W. 246, relied upon by counsel for the plaintiffs. In the *Stryk Case* the parents actively participated in the false representations and had knowledge thereof. In enacting the statute the legislature had in mind the enforcement of the compulsory education law. It realized that the public welfare would be promoted by keeping minors out of industrial employment until they had arrived at the age of eighteen years (excepting in certain emergency cases); that the enforcement of such regulation was conducive to the physical and intellectual development of the minors; and in authorizing the granting of permits as is provided for by the exception it recognized the existence of emergency and exceptional cases. It placed the duty of inquiry with respect to the age of the minor applicant upon the employer, and in order to effectuate its purpose it provided for penalization of the em-

ployer where the provisions of the statutes are not complied with.

In view of what has been said, it would appear that the beneficent design of the legislature would become largely frustrated if in a case like the instant one the employer would be relieved from paying double compensation. In other words, the very purpose of the statute would be defeated. Our view thus expressed does not include a situation where the parents actively participate in making false representations, upon which the employer relies and pursuant to which he is induced to employ the minor. That question is not before us. The workmen's compensation law was passed as an economic measure and declares a public policy of this state. It must be liberally construed to effectuate the purpose for which it was enacted. Therefore we are constrained to hold, and we do hold, that the Industrial Commission rightly awarded double compensation.

*By the Court.*—The judgment of the lower court is affirmed, with costs.

### *On rehearing.*

The following opinion was filed June 18, 1928:

DOERFLER, J. In this case this court granted a rehearing to the plaintiffs. On the motion for rehearing and on the rehearing it was urged by counsel for the plaintiffs that under sec. 102.09 (4a) of the Statutes it becomes necessary on the part of the claimant to establish dependency by a preponderance of the evidence, before the Commission can order an award. Such was the holding in *Wisconsin Drainage Co. v. Industrial Comm.* 161 Wis. 42, 152 N. W. 460. The test as there laid down as a basis for an award consists of the inquiry as to whether the surviving parents are losers in respect to their dependency for support by the incidents of the industry. In the case of *Milwaukee B. Co. v. Wiecki,* 173 Wis. 391, 181 N. W. 308, the law as laid down in the

*Wisconsin Drainage Co. Case, supra,* was reaffirmed. Both of these cases were decided under the statutes as they existed prior to 1923. In the year above referred to, sec. 2394—9 (4c) was renumbered and amended, and said statute when so renumbered became known as sec. 102.09 (4a). Before the amendment the statute read as follows:

"In case the deceased employee leaves no one wholly dependent upon him for support, but one or more persons partially dependent therefor, the death benefit shall not exceed four times the amount devoted by deceased, during the year immediately preceding his death, to the support of such dependents and shall be apportioned according to the percentage that the amount devoted by the deceased to the support of such person or persons, for the year immediately prior to the accident, bears to the average annual earnings of the deceased. Where, by reason of minority, sickness, or other causes during such year, the foregoing basis is unfair or inadequate, the death benefit shall be such sum as the commission may determine to be fair and just, considering the death benefits allowed in other cases where such untoward causes do not exist."

After the amendment it reads as follows:

"In case the deceased employee leaves no one wholly dependent upon him for support, but one or more persons partially dependent therefor, the death benefit shall be such sum as the commission shall determine to represent fairly and justly the aid to support which the dependent might reasonably have anticipated from the deceased employee but for the accident, considering their physical surroundings and conditions. The aggregate benefits in such case shall not exceed twice the average annual earnings of the deceased; but, if the deceased has contributed to the support of such dependents during the year immediately preceding his death, and if four times such contributions shall exceed twice the average annual earnings of the deceased, then the aggregate benefit may exceed twice the average annual earnings of the deceased, but shall not exceed four times such contributions. In no event shall the aggregate benefits in such case exceed the amount which would accrue to a person solely and wholly dependent. Where there is more than one partially

dependent the weekly benefit shall be apportioned according to their relative dependency. The term 'support' as used in this section shall include contributions to the capital fund of the dependents, for their necessary comfort."

On June 3, 1924, an opinion was handed down in the case of *Wisconsin Mut. L. Co. v. Industrial Comm.,* reported in 184 Wis. 203, 199 N. W. 221. In that case it was held that:

". . . Dependency exists only when the amount contributed by a minor child the preceding year exceeds the cost of his support for such year. . . . The workmen's compensation law was enacted for the purpose of in a measure making good the present financial losses and future losses for a limited time based upon present losses. Where there are no present losses there can be no award for future losses. . . . Present dependency must be shown before any provision of the compensation act can be invoked. In this case, under the rule adopted by this court in *Milwaukee B. Co. v. Wiecki,* 173 Wis. 391, 181 N. W. 308, there was no present financial loss to the parents and therefore the compensation act does not apply to the case at all."

In the case of *Thunder Lake L. Co. v. Industrial Comm.* 188 Wis. 418, 206 N. W. 177, the rule laid down by this court in the *Wisconsin Mut. L. Co. Case, supra,* was adhered to and reaffirmed.

With the rulings of the court hereinbefore referred to, construing the statute involved as it existed both before and after the 1923 amendment, we may definitely conclude that under the law of this state the following propositions are firmly established: First, that partial dependency is not presumed; second, that it must be proven by a fair preponderance of the evidence; and third, that as a prerequisite to the granting of an award, dependency must be shown. In order that dependency may be found, it is necessary to affirmatively show by the preponderance of the evidence that during the year preceding the accident there has been contributed to the alleged dependents an amount in excess of the employee's cost of support.

The Commission based the yearly earnings of the employee upon his earnings during the week preceding his death, which were $12.50. The record does not disclose a finding based upon his actual earnings during the year preceding the accident. Under these circumstances, the statute was not complied with as construed by this court. The mother testified that during the year preceding the accident the deceased earned from $8 to $8.50 per week, and that he earned during vacation the sum of $12 per week, and that he delivered all of his earnings to her, which were used for the family support. The father, however, testified that his son's contributions amounted to about $200 per year. Under these circumstances there was left undetermined the question of actual dependency as required by the foregoing decisions of this court. The Commission then proceeded to compute the award, and inasmuch as the deceased employee had earned the sum of $12.50 during the week immediately preceding the accident, that figure was taken as the basis of his yearly earnings. By proceeding in that manner in its computation to determine the award, the Commission evidently construed the statute as amended in 1923. It had before it the evidence, which reflected the physical surroundings and conditions. It appeared that this young man was approximately seventeen years of age, was in good physical health, weighed about 175 pounds, and was equipped with a fair high school education. As we construe the statute, we are of the opinion that the construction placed upon it by the Commission is entirely warranted, and that to hold otherwise would result in emasculation of the statute itself.

The method of computation of the award is not in conflict with the case of *Wisconsin Mut. L. Co. v. Industrial Comm., supra,* wherein it is said: "The workmen's compensation law was enacted for the purpose of in a measure making good the present financial losses and future losses for a limited time based upon present losses."

The statute reads: "Death benefits shall be such sum as the commission shall determine to represent fairly and justly the aid to support which the dependent might reasonably have anticipated from the deceased employee but for the accident." How could it be said, under the facts and circumstances in this case, that the anticipation based upon the then existing conditions would not warrant a satisfactory inference that the dependent might reasonably have anticipated, but for the accident, a contribution of $12.50 per week?

Anticipation refers to the future. Under the statute it must be based upon all the facts and circumstances existing at the time of the accident.

*By the Court.*—The former judgment of this court entered herein is vacated and set aside. The judgment appealed from is reversed, and the cause remanded with directions to transmit the record to the Commission to find whether or not dependency existed, as required under the decisions of this court above referred to.