DULUTH-SUPERIOR MILLING COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*September 17—December 7, 1937.*

188

For the appellants there were briefs by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen.*

For the respondent Industrial Commission there were briefs by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Frances Lindsay there were briefs by *Hughes & Anderson* of Superior, and oral argument by *R. E. Anderson.*

The following opinion was filed October 12, 1937:

MARTIN, J. The facts are not in dispute. This being so, the question here is one of law. *Gunderson v. Industrial Comm.* 218 Wis. 248, 250, 260 N. W. 636; *Gomber v. Industrial Comm.* 219 Wis. 91, 93, 261 N. W. 409.

Sec. 102.48, Stats. 1935, provides in part:

"If the deceased employee leaves no one wholly dependent upon him for support, partial dependency and death benefits therefor shall be as follows:

"(1) An unestranged surviving parent or parents, residing within any of the states or District of Columbia of the United States, shall receive a death benefit of twelve hundred dollars. . . .

"(2) In all other cases the death benefit shall be such sum as the commission shall determine to represent fairly and justly the aid to support which the dependent might reasonably have anticipated from the deceased employee but for the injury. To establish anticipation of support and dependency, it shall not be essential that the deceased employee made any contribution to support. The aggregate benefits in such case shall not exceed twice the average annual earnings of the deceased; or four times the contributions of the deceased to the support of such dependents during the year immediately preceding his death, which ever amount is the greater. In no event shall the aggregate benefits in such case exceed the amount which would accrue to a person solely and wholly dependent. . . ."

Sub. (2) of sec. 102.51, Stats. 1935, provides:

"No person shall be considered a dependent unless a member of the family or a spouse, or a divorced spouse who has

not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employee."

To sustain the award, actual dependency must be proven, and the applicant must also prove that she was a "member of the family" of the deceased.

It is contended by respondents that the stipulation entered in the record by the examiner to the effect "that there was a monthly contribution by John Blaney during the year immediately prior to the injury of $60 to the support of the applicant, Frances Lindsay; a total of $720," was a net contribution of said amount to the support of Mrs. Lindsay. There is no basis in the evidence from which an inference might be drawn that the total contribution of $720 made by the deceased the last year immediately preceding his death, was in addition to the current bills incurred incidental to the running of the house. Mrs. Lindsay testified in part as follows:

"*Q.* Now, before your mother died, you and she and your stepfather and your children lived together? *A.* Yes.

"*Q.* And did your stepfather turn over to her the money to run the house, or how was that done? *A.* We did it together, I think. We had a check account at that time.

"*Q.* And she used out of his income money to help run the house? *A.* Yes, she made out the checks.

"*Q.* And you lived there? *A.* Yes.

"*Q.* And you got some of your living out of his money before your mother died? *A.* Yes.

"*Q.* And after your mother died, he started in and paid the bills? *A.* Yes."

She further testified:

"*Q.* Were you actually dependent upon your stepfather during the year before he died, and at the time of his death, for your support? *A.* Yes, sir.

"*Q.* You did, in fact, depend on that? *A.* Yes, sir.

"*Q.* And that had been true for several years? *A.* Well, I would say for eighteen years, we lived together with that understanding. I had the home and he paid the upkeep."

It appears that Mrs. Lindsay used for herself and the payment of taxes on her home out of her own funds approximately $125, during the year prior to the death of Mr. Blaney. At the time of Mr. Blaney's death, Mrs. Lindsay's home was free of incumbrances, and of the value of about $2,000. At that time, she had approximately $300 in cash, and household furniture and furnishings worth about $300. Jean Lindsay, born August 27, 1914, and Claire Lindsay, born April 30, 1918, lived in the home with their mother and her stepfather at the time of Mr. Blaney's death, and they had so lived for eighteen years; these two children owned real estate worth about $2,300 at the time of Mr. Blaney's death. There was an income of approximately $120 per year, which was used for the benefit of the children.

Both the examiner and the commission failed to make any allowance for the cost of the accommodations, services, and the food actually received and consumed by Mr. Blaney. Under the decisions of this court, the award in the instant case must be based on the difference, if any, between the total contribution of $720, made by the deceased during the last year preceding his death, and the cost of his support during said year. *Wisconsin Mut. L. Co. v. Industrial Comm.* 184 Wis. 203, 199 N. W. 221; *Thunder Lake L. Co. v. Industrial Comm.* 188 Wis. 418, 206 N. W. 177; *Zurich Gen. Acc. & L. Co. v. Industrial Comm.* 196 Wis. 159, 216 N. W. 137, 220 N. W. 377.

The appellants contend that the relationship was contractual, and therefore there is no liability under the compensation act, and in support of their contention cite *Illinois Steel Co. v. Industrial Comm.* 184 Wis. 273, 275, 199 N. W. 154. The facts in that case are readily distinguishable from the facts in the instant case. In that case, in 1907 Nelson commenced to board with the claimant and her husband at an agreed weekly rate. The family then consisted of the claimant, Mrs. Peterson, her husband, and their two children. In October, 1912, Mr. Peterson died. Thereafter,

Mrs. Peterson, her children, and Nelson moved to another home. After the death of Mr. Peterson, for a year and a half, Mr. Nelson continued to pay board at a fixed sum per week. From that time until his death he paid an increased sum of six to ten dollars per week for his board, and paid the rent for the quarters they then occupied of $9 a month, taking some of the receipts in his own name. Occasionally he bought groceries and some wearing apparel, for Mrs. Peterson. At the time he commenced paying the additional amounts, there was an understanding between him and Mrs. Peterson that she would take care of him, and that he would continue to live there, paying the additional necessary amounts to help carry on the household. The commission found that at the time of the death of Nelson, and for more than one year prior thereto, Mrs. Peterson was a member of Nelson's family, and was partially dependent upon him for support; that, during the year preceding his death, he had contributed to the support of Mrs. Peterson $334. The commission entered an order for a death benefit of $1,376. This award was affirmed by the circuit court for Dane county. On appeal, this court reversed the judgment, with directions to dismiss the claim. The court said:

"While it may well be that relationship by blood or marriage is not essential in order that a person claiming as dependent under the statutes here involved may properly be considered a member of the family of the deceased employee and therefore entitled to compensation, as is suggested in *Armstrong v. Industrial Comm.* 161 Wis. 530, 532, 154 N. W. 844, and as directly held, under substantially the same statutory language, in *Peay v. Fred Kulow & Co.* 226 Mich. 512, 197 N. W. 1020, nevertheless we must hold that the situation here disclosed is not sufficient to bring the claimant within the proper interpretation of the term 'family.' "

Continuing, the court said:

"A family relationship existed in this household between Mrs. Peterson and her two children. As to that family relationship Nelson was a boarder, and though paying more

during the last period of his life for his food and lodging than before, it was nevertheless entirely a contract arrangement which might be terminated at any time by either."

In the instant case, we have quite a different situation. Mr. Blaney married Mrs. Lindsay's widowed mother in 1901. Thereafter, Mr. Blaney, his wife, and stepchildren lived together as a family. Mrs. Lindsay continued to live in this family unit until she married in 1913, whereupon, she established a home with her husband. Two children were born to this marriage. Mrs. Lindsay's husband died in 1918. She at that time purchased a home in which she lived with her two children, her mother, stepfather, and two brothers. Her two brothers married and left home. Mrs. Blaney died in 1931. Mr. Blaney owned part of the household furniture which was used by the family. Mrs. Lindsay testified:

"I bought the home, with the understanding that my mother and father would live with me as long as they wanted to."

While Mrs. Blaney lived, Mr. Blaney turned over to her the money to run the house. However, at that time, Mrs. Lindsay paid a part of the household expenses. After Mrs. Blaney's death, Mrs. Lindsay, her children, and Mr. Blaney continued living together as a family unit, Mr. Blaney paying the bills incurred incidental to the running of the house, which arrangement continued until the time of Mr. Blaney's death. The family relationship appears to have been pleasant and happy. There was never any discussion between Mrs. Lindsay and Mr. Blaney as to severing the family relationship as it had existed for so many years. The contributions made by Mr. Blaney were made solely as a member of the family. The relationship as disclosed by the undisputed testimony of Mrs. Lindsay permits of no other interpretation.

The appellants further contend that Mrs. Lindsay failed to show that she was a "member of the family." Our stat-

utes do not specifically mention "stepchild" or "stepchildren" in the sections of the compensation act pertaining to dependency. In some jurisdictions, stepchildren are specifically mentioned among the persons conclusively presumed wholly dependent. However, the Wisconsin statute, sub. (2) of sec. 102.51, Stats. 1935, provides:

"No person shall be considered a dependent unless a member of the family or a spouse, or a divorced spouse who has not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employee."

Relationship by blood or marriage is not essential that a person claiming as a dependent under the statute may be considered a member of the family of the deceased employee and entitled to compensation. *Armstrong v. Industrial Comm.* 161 Wis. 530, 154 N. W. 844; *Illinois Steel Co. v. Industrial Comm.* 184 Wis. 273, 199 N. W. 154; *Peay v. Fred Kulow & Co.* 226 Mich. 512, 197 N. W. 1020; *Holmberg v. Cleveland-Cliffs Iron Co.* 219 Mich. 204, 189 N. W. 26. The legislative construction of the word "family," as shown on pages 2555 to 2557 of the Official Report of the Testimony and Proceedings of the Wisconsin Legislative Industrial Insurance Committee (1909), in regard to the meaning of the word "family," clearly indicates that the word "family" should not be restricted to blood relatives, and that it was intended that persons living together as a family were to be considered as a family. The words, "member of the family," must be construed as that term is commonly understood and spoken of in the ordinary and accepted use of those words. However, in the instant case, we have a situation where the stepchild lived in the family consisting of her mother, her stepfather, and her own two children, from 1918 until 1931, and following the death of Mrs. Blaney the relationship continued unitl Mr. Blaney's fatal injury on February 28, 1936. The court, in *Merritt v. Baldwin,* 6 Wis. *439, held that service of process upon the

mother-in-law, who was temporarily residing with defendant's family, defendant being absent at the time, was good service. The statute required personal service upon defendant, or, if not found, by leaving a copy thereof at his usual place of abode, *in the presence of some one of the family* of suitable age and discretion, who should be informed of the contents thereof.

"The word 'children,' under a statute providing for compensation to children who are actually dependents of a workman, has been held to include stepchildren where the evidence shows that the stepfather supported them. *Newark Paving Co. v. Klotz,* 85 N. J. Law, 432, 91 Atl. 91. Affirmed in 86 N. J. Law, 690, 92 Atl. 1086." 13 A. L. R. 708. See cases in 100 A. L. R. 1092.

The mere fact that there was a reciprocal understanding, whereby each agreed to perform certain functions in the household, does not wipe out a family status which had existed for a period of eighteen years and reduce the parties to mere contractors. The deceased, John Blaney, was at no time during the whole period of eighteen years a mere boarder. He was a member of the family. He assumed the responsibility of paying all the household expenses.

However, in making the award, no account was taken of the cost of Mr. Blaney's support during the year preceding his death, which necessitates reversing the judgment, with directions to return the record to the Industrial Commission for further proceedings in accordance with this opinion.

*By the Court.*—Judgment appealed from is reversed, with directions to return the record to the Industrial Commission for further proceedings in accordance with this opinion.

The following memorandum was filed December 7, 1937:

MARTIN, J. (*on motion for rehearing*). Upon the motion for rehearing, the respondents are apprehensive that the lan-

guage used by this court in its opinion may be construed as meaning that they will not be permitted to introduce testimony upon a further hearing to show what sums were actually contributed by the deceased, John Blaney, to the support of his household, and what sums were contributed to the support of the respondent, Frances Lindsay, during the year preceding his death. In the decision, filed October 12, 1937, the court stated:

". . . His earnings during the year preceding his death were $1,440. It was agreed at the hearing before the examiner that Mr. Blaney contributed on account of household expenses, $60 a month, or a total of $720, during the year immediately preceding his death."

From the stipulated facts, the court assumed that $720 was the total contribution made by the deceased during the year immediately preceding his death. It is contended that said amount was the net contribution to the support of Mrs. Lindsay. When the record is returned to the Industrial Commission, the applicant may show the true facts, but, in making the award, account must be taken of the cost of Mr. Blaney's support during the year preceding his death. There is no occasion to change the mandate, since the judgment was reversed with directions for further proceedings in accordance with the opinion which the memorandum clarifies.

Motion denied, without costs.