BRICKSON, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Appellants.

*No. 45. Argued October 31, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 600.)

---

[10] *Supra,* footnote 1.
[11] *Supra,* footnote 4, at page 262, sec. 16.12.

For the appellant Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the appellants Ray-O-Vac, Inc., and Employers Mutual Liability Insurance Company there was a brief by *Hart, Kraege, Wightman, Bieber & Thurow* of Madison, and oral argument by *Walter D. Thurow.*

For the respondent Olga Brickson there was a brief by *Lloyd A. Schneider* of McFarland, and *Frederick F. Hillyer* of Madison, and oral argument by *Mr. Hillyer.*

HEFFERNAN, J. The commission made the following findings of fact:

"That on October 28, 1966, the applicant fell when passing from a washroom into a hallway on the premises of the employer; that the floor of the washroom was level with that of the hallway and there was no threshold or riser of any kind in the doorway; that the floor of the washroom was tile and that of the hallway of asphalt composition; that at the time of the fall no water or any other foreign substance was on the floor of the washroom or in the hallway in the immediate vicinity of the fall; that the applicant did not slip; that after the fall the applicant stated she did not know why she fell but that her right foot stopped just outside the doorway; that the accident causing injury did not arise out of the employment."

The only question on review to this court is whether there is any credible evidence to support the findings of the commission. *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182.

In *Kraynick v. Industrial Comm.* (1967), 34 Wis. 2d 107, 111, 148 N. W. 2d 668, this court said:

"The commission found that Mr. Kraynick's death did not arise out of his employment and that the applicant had failed to prove the cause of the fall. Upon review, we must determine whether credible evidence or reasonable inferences exist which sustain the findings of the commission. *Grant County Service Bureau v. Industrial Comm.* (1964), 25 Wis. (2d) 579, 582, 131 N. W. (2d) 293. When facts are undisputed, the finding of the commission is conclusive even though more than one inference can reasonably be drawn. *Stommel v. Industrial Comm.* (1962), 15 Wis. (2d) 368, 372, 112 N. W. (2d) 904; *Van Roy v. Industrial Comm.* (1958), 5 Wis. (2d) 416, 425, 92 N. W. (2d) 818; *Schmidlkofer v. Industrial Comm.* (1953), 265 Wis. 535, 61 N. W. (2d) 862."

In *Nielsen v. Industrial Comm.* (1961), 14 Wis. 2d 112, 118, 109 N. W. 2d 483, a fall case, we held that there is no presumption that an injury is caused by, results from, or arises out of employment merely because an injury occurs while the employee is at work. We said therein:

"Human experience does not attest all accidents or a sufficient share of them, occurring on an employer's premises, arise out of the employment as that term has been defined by this court."

The applicant, therefore, has the burden of proving that the accident arose out of her employment. In *Van Valin v. Industrial Comm.* (1962), 15 Wis. 2d 362, 364, 112 N. W. 2d 920, this burden was expressed thus:

"It is an elementary principle of law that the applicant has the burden of proof in a workmen's compensation case, and if the evidence before the Industrial Commission is sufficient to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish a claim for compensation, it becomes the duty of the commission to deny the applica-

tion on the ground that the claimant did not sustain his burden of proof."

Applying the tests set forth above, we are satisfied that the applicant did not sustain her burden of proof. The question is not whether there is evidence to support a finding that was not made, but whether there was evidence to support a finding that was, in fact, made by the commission. We thus need not consider whether there was credible evidence that would have supported a contrary inference or conclusion. *Indianhead Truck Lines v. Industrial Comm.* (1962), 17 Wis. 2d 562, 565, 117 N. W. 2d 679.

There was testimony that Olga Brickson left her position in the assembly line on the first floor at about noon on October 28, 1968, and went to the company lunchroom on the second floor. She ate her lunch and then went to the adjacent washroom. She testified that she fell just as she was emerging from the washroom. Another lady preceded her and, when the door was opened, Olga Brickson walked through the doorway to the hallway. She stated that the floor of the washroom was a ceramic tile, while the floor in the hallway was an asphalt composition. As she emerged, she stepped on the composition floor, "when my foot stopped, and I started stumbling forward." She stated that she was° afraid she would hit her head on the opposite wall, so she turned herself to the left. She fell and broke her hip. She testified that prior to the fall she was in good health and that for thirty years prior to the fall she had never fainted. She testified that she did not lose consciousness at any time just prior to or after her fall.

She testified that at the time of the accident she was wearing rubber-soled, canvas shoes, and that this was the second time she had worn them. These shoes were admitted into evidence. There were black spots on the soles of the shoes, but no attempt was made to intro-

duce evidence to associate these spots with any factory hazards.

The employer introduced a statement given by Olga Brickson to an insurance adjuster. That statement contained the sentence:

"I really don't know what caused me to fall because I don't recall slipping on anything or tripping over anything. I was walking in a normal manner and the next I had a feeling of falling forward."

Olga Brickson at the hearing testified that she told the adjuster that her foot "stopped" but that he did not put that in his statement.

At the hearing, she stated that she was interviewed by the adjuster a second time because the insurance company was not satisfied with the first statement. The adjuster said, "They want to know, 'Why did you fall?'" Olga Brickson said, "He kept asking me, 'Why did you fall?' And he could see that I was a little annoyed, because I said, 'I don't know why I fell.'"

It is thus apparent that her statement to the adjuster was inconsistent with her statement under oath. While she testified that she told the adjuster that her foot stopped, the commission was the judge of her credibility and could choose to believe or disbelieve all or parts of her testimony and her out-of-court statements. On the basis of her statement that she did not know what caused her to fall, there is evidence to sustain the conclusion that the fall was unexplained.

There was also uncontradicted evidence that the floor, both in the washroom and in the hallway just beyond the threshold of the door, was clean, dry, unlittered, and level. There was no evidence of a slip or trip.

From this evidence, too, the department could conclude that the fall was unexplained. Both *Nielsen v. Industrial Comm.* (1961), 14 Wis. 2d 112, 109 N. W. 2d 483, and *Kraynick v. Industrial Comm.* (1967), 34 Wis. 2d

107, 148 N. W. 2d 668, hold that there is no presumption that an unexplained fall occurring in the course of employment "arises out of his employment." The burden of proving the facts essential to recovery in a workmen's compensation case rests upon the applicant. That burden has not been discharged by Olga Brickson.

On appeal the plaintiff contends that her testimony at the hearing together with that of her attorney does, in fact, explain her fall. She testified that, when she stepped from the ceramic tile of the washroom to the composition tile of the hallway, her foot "stopped." The testimony of her lawyer showed that he had experimented to determine the relative slipperiness of the tile as compared to the composition floor. He said his leather-soled shoe "slid easily" on the tile but "stopped readily" on the composition tile of the hallway.

The applicant contends that, given the comparative slipperiness of the floors and the presence of carbon dust in the area where the plaintiff worked, the case is covered by the "positional-risk doctrine."

Although there was, admittedly, carbon dust in the assembly-line area where Olga Brickson worked, there was no evidence that there was any in the hallway where she fell. While there was evidence of black spots that looked like "tar" on the bottoms of her new shoes, there was no testimony as to what the substance was. Even if we were to assume it was carbon dust, which we cannot in the absence of evidence, there was absolutely no testimony to show what the presence of carbon dust would have contributed to Olga Brickson's fall. The record is silent as to whether carbon dust on the floor or on her shoes would have made the surfaces more slippery or less slippery.

It is clear from the examiner's synopsis, contrary to the apparent assertion of the plaintiff, that evidence was admitted to show that the composition floor was less slippery than the ceramic tile.

Given these facts, which are undisputed, it appears to be the contention of the applicant that the less-slippery area created a zone of "special danger" entitling her to the "positional-risk doctrine."

We have stated:

"The 'positional risk' interpretation has been phrased in various ways. The core of the idea is that an accident arises out of the employment when the connection between the employment and the accident is such that the obligation or circumstances of the employment places the employee in the particular place at the particular time when he is injured by a force which is not solely personal to him. . . .

"Applying the 'positional risk' doctrine it has been said accidents arise out of employment if the conditions or obligations of the employment create a zone of special danger out of which the accident causing the injury arose. Stated another way, an accident arises out of employment when by reason of employment the employee is present at a place where he is injured through the agency of a third person, an outside force, or the conditions of the location constituting a zone of special danger." *Cutler-Hammer, Inc. v. Industrial Comm.* (1958), 5 Wis. 2d 247, 253, 254, 92 N. W. 2d 824.

The department did not make a special finding that the less-slippery asphalt tile was not a zone of special danger. Such a finding, however, is implicit in its finding that the injury did not arise out of the applicant's employment. No evidence was adduced that would support a finding that the composition tile constituted a zone of danger. There is merely the bald assertion that because it was less slippery than the ceramic tile, it was dangerous. An applicant for workmen's compensation who relies upon the "positional-risk" theory and claims that his work placed him in a zone of danger must assume the burden of showing that a special hazard exists. In *Kraynick v. Industrial Comm.* (1967), 34 Wis. 2d 107, 148 N. W. 2d 668, we refused to assume that a level concrete floor created a zone of special

hazard. Here, no proof was offered that the juxtaposition of slippery ceramic tile to less-slippery composition floor created a dangerous situation that increased the risk to the employee by virtue of her having to be there in the course of her employment. The finding of the commission that the injury did not arise out of the employment specifically negates the finding that the injury was compensable by reason of the "positional-risk" theory. The finding that the injury did not arise out of the employment is supported by credible evidence.

The trial judge, in reviewing the action of the commission, concluded that the synopsis of the evidence submitted to the commission failed to depict fairly the true state of the evidence. A review of the entire transcript and a comparison with the synopsis reveals several minor omissions. However, we are not convinced that the omissions were:

". . . so prejudicial that it is likely that the commission would have reached the opposite conclusion from that which it did if the synopses had set forth an adequate summary of the omitted testimony." *State v. Industrial Comm.* (1956), 272 Wis. 409, 422, 76 N. W. 2d 362.

While the examiner on occasion took over the examination of witnesses, who were being examined adequately by counsel, and then proceeded to examine them *ad nauseam* about trivia, on review of the entire transcript, we cannot conclude that his conduct evinced such prejudice that the applicant was denied a fair hearing.

*By the Court.*—Judgment reversed, and cause remanded for the purpose of reinstating the findings of the department.