BLACK RIVER DAIRY PRODUCTS, INC., and another, Respondents, V. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Appellants.

*No. 87. Argued March 27, 1973.—Decided May 14, 1973.*
(Also reported in 207 N. W. 2d 65.)

538

For appellant Department of Industry, Labor & Human Relations the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondents there was a brief and oral argument by *H. R. Klueter* of Wausau.

BEILFUSS, J. The issue before us is whether the evidence is sufficient to sustain the finding that the workmen's compensation claimant, who was injured in a fall going from his home to his delivery truck, was performing services incidental to his employment or that the injury arose from his employment.

Donald L. Smith, age forty, sustained a back injury on December 29, 1969, when walking from the back door of his home in Green Bay to his delivery truck which was parked in his driveway. Smith was a salesman of Roma Pizza for the respondent Black River Dairy Products, Inc., of Eau Claire, Wisconsin. For three years prior to the accident his only employment was with this company. Smith's job entailed the promoting, selling and delivering of Roma pizzas to stores, taverns and institutions. He established the route originally and built it up to about 175 customers. His territory commenced one mile outside of Green Bay and extended to approximately a 50-mile radius around the city. His compensation was based in part on salary and the rest on commission depending upon his sales. He used a delivery truck furnished by his employer. It was a three-fourths ton pickup truck with a freezer body attached.

Smith's supervisor was one Donald O. Peterson at the company's home office located in Eau Claire, 193 miles away. Because the home office was in Eau Claire and

Smith was a salesman, he was not required to report to the office before work every day. In fact, he had no set working hours, and he would use his own judgment as to the amount of time he put in. His average workday would run from ten to fourteen hours, and many times this would include Saturdays and Sundays. His practice was to be at his first stop by 8 a. m., so he usually left his house at 7 or 7:15 a. m.

His first stop on the day of the accident was to be Marinette. The night before he loaded up the truck with pizzas and then brought it home. (The record does not indicate where he picked up the pizzas.) He parked the truck in his driveway with a 30-foot electrical cord plugged into his home which activated the truck's freezer unit to keep the pizzas frozen and to build up frost for the next day. This was the customary manner in which he prepared for his route each day. Smith also did his bookwork and made business telephone calls at night from his home. Every evening he would make a night deposit at the bank and mail the daily receipts. About 40 people throughout the state had jobs like Smith for the respondent company and they all operated the same way. Smith received $20 per week as expense money for electricity, phone calls, and promotion expense.

On the morning of the accident the truck was parked in the usual place, about 15 feet from the back door of the house. Smith got up at 6:15 or 6:30 a. m., got dressed and ate breakfast. His wife went outside and unplugged the freezer, unlocked the truck doors and put his route book with the accounts in the truck. When she was outside doing this, Smith started out the back door to his truck. Unfortunately, it had misted the night before and unbeknown to Smith the sidewalk and driveway were covered with a thin slippery almost invisible sheet of ice. His wife was aware of this and went to alert him. Before she could tell him, he was about halfway between the house and truck when he slipped and

fell injuring his back. Smith testified that he intended to get into the truck and be on his way when he fell.

The court, in its memorandum decision, stated it had difficulty finding any evidence in the record to support the department's findings "[t]hat it was customary at the end of a work day to load up the freezer body with pizzas to be delivered the following day." [1] The court concluded: (1) The trip to the truck was not a special trip for the employer but rather Smith's daily routine, and he was on his way to work, which was the employer's truck; (2) the evidence does not indicate whether Smith was required to keep the truck at home or whether it was kept there for his own convenience; and (3) the accident occurred on Smith's premises before he reached the truck, and therefore the employer had no control over the premises. As a result, the court concluded as a "matter of law" that Smith was not engaged in performing a service growing out of or incidental to his employment at the time of his injury, that the injury did not arise from his employment, and that the findings to the contrary were not sustained by the evidence.

The applicable statute in this case is sec. 102.03 (1) (c) 1 and (f), which provides:

"102.03 **Conditions of liability.** (1) Liability under this chapter shall exist against an employer only where the following conditions concur:

". . .

"(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe going to and from his

---

[1] The record, however, reveals on cross-examination the following testimony of Mr. Smith:

"*Q.* You brought your truck home, left it in the driveway?

"*A.* I loaded the truck at night. Brought it home and plugged it in.

"*Q.* This is the customary manner in which you did it?

"*A.* Yes.

"*Q.* Then Monday morning you were on your way from your house to your truck when you fell?

"*A.* Yes."

employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; . . . The premises of his employer shall be deemed to include also the premises of any other person on whose premises service is being performed.

" . . .

"(f) Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

With certain exceptions the general rule of law is that an employee is performing services growing out of and incidental to his employment when going to and from work only when he is on the premises of his employer. *Makal v. Industrial Comm.* (1952), 262 Wis. 215, 54 N. W. 2d 905, and *Halama v. ILHR Department* (1970), 48 Wis. 2d 328, 179 N. W. 2d 784. An exception to this rule is stated in *Bitker Cloak & Suit Co. v. Industrial Comm.* (1942), 241 Wis. 653, 656, 6 N. W. 2d 664. In that case this court stated: [2]

". . . It is the rule in this state that an employee, whose duty it is to travel on behalf of an employer and to do work away from the premises of the employer and who is not required to report to the premises before starting out to do this outside work, is performing services as soon as he leaves his home and starts for the first place at which he is to perform such work. *United States C. Co. v. Superior H. Co.* 175 Wis. 162, 184 N. W. 694; *West Bend v. Industrial Comm.* 202 Wis. 319, 232 N. W. 524."

---

[2] This proposition of law has been reaffirmed in subsequent cases to *Bitker. Makal v. Industrial Comm., supra;* and *Fruit Boat Market v. Industrial Comm.* (1953), 264 Wis. 304, 58 N. W. 2d 689.

In this case it was Smith's duty as a salesman to travel on behalf of the company servicing and soliciting orders. He was not hired to perform work on the company's premises, but rather to work by traveling within a prescribed route promoting business. He obviously was not required to report to the premises of his employer 193 miles away before starting out to do his work each day. He had no set hours and the hours he put in were based on his own judgment. We believe that at the time of the injury Smith was performing such services as soon as he left his home and started for the first place of business, being Marinette. He had left the back door of his house and started walking toward the truck, clearly intending to get into the truck to perform such work. This was the customary way in which all salesmen for the company operated. He routinely parked the truck at his home to activate the freezing unit. Smith was injured while acting in his usual manner, which under these circumstances was for the benefit of his employer and within the scope of his employment.

Appellants contend that the department's findings were of fact and therefore the only inquiry is whether there is credible evidence in the record to sustain it. Respondents contend a question of law, not fact, is presented and that the court is not bound by the department's conclusions. The difficulty of the instant case is not what the facts are but the application of the law to those facts. The litigants do not question the facts. In *Fels v. Industrial Comm.* (1955), 269 Wis. 294, 296, 69 N. W. 2d 225, this court stated, ". . . The determination whether under undisputed facts an employee is performing services growing out of or incidental to his employment requires the application of the law to those facts. . . ." Accordingly, in this case the court is not bound by the department's determination whether it be treated as a finding of fact or a conclusion of law. *Eckhardt v. Industrial Comm.* (1943), 242 Wis. 325, 7

N. W. 2d 841. *See Chamberlain v. Industrial Comm.* (1958), 5 Wis. 2d 411, 92 N. W. 2d 829.

The Workmen's Compensation Act is not confined by common-law concepts of scope of employment, and the test of recovery is not a casual relation between the nature of the employment of the injured party and the accident. It is not necessary that the employee be engaged at the time of the injury in an activity of benefit to his employer. *Fels v. Industrial Comm., supra.* Rather, the statute, sec. 102.03, controls the conditions as to what is or is not compensable. This court has consistently stated that the workmen's compensation law must be liberally construed to include all services that can be reasonably said to come within it. *Fels v. Industrial Comm., supra; Grant County Service Bureau v. Industrial Comm.* (1964), 25 Wis. 2d 579, 131 N. W. 2d 293.

Whether we consider this case to be a traveling salesman's claim under sec. 102.03 (1) (f), Stats., or an exception to going to work on the premises of the employer under sec. 102.03 (1) (c) 1, a liberal interpretation of the Workmen's Compensation Act requires that coverage be afforded to the claimant.

The last sentence of sec. 102.03 (1) (c) 1, Stats., provides the exception—"The premises of his employer shall be deemed to include also the premises of any other person on whose premises service is being performed."

In 1 Larson, *Law of Workmen's Compensation,* pp. 4–193—4–195, sec. 18:32, Professor Larson states:

"When reliance is placed upon the status of the home as a place of employment generally, instead of or in addition to the existence of a specific work assignment at the end of the particular homeward trip, three principal *indicia* may be looked for: the quantity and regularity of work performed at home; the continuing presence of work equipment at home; and special circumstances of the particular employment that make it neces-

sary and not merely personally convenient to work at home.

"...

"... If it is necessary to work at night, and if no suitable place is provided by the employer, this is also a persuasive factor. ..."

In this case the record does not reveal the respondent-employer had a place of business or premises in the Green Bay area. Every working day Smith would return to his home and complete his daily business records, send daily reports and make daily deposit of funds received on behalf of the employer. From the record the only reasonable inference is that Smith did this bookwork at home, not for his personal convenience but because the employer furnished him no other place to do this work. The same is true as to his promotional and other business calls—the employer just did not provide other telephone facilities insofar as the record reveals.

The major equipment furnished by the employer was the refrigerator truck. To keep the employer's pizzas frozen it was necessary to activate the freezing unit by means of an electrical connection. Again, from the record the only reasonable inference that can be drawn is that the employer did not provide the premises nor the means to perform this service that was not only beneficial to the employer but essential. Smith had to perform this service on his own premises.

The employer was not only aware of the extent to which Smith was using his own premises for the benefit of the employer but obviously approved of the practice by giving Smith $20 per week for his phone calls, electrical expense and promotional expense.

Under the three *indicia* recognized by Professor Larson, namely (1) "the quantity and regularity of work performed at home;" (2) "the continuing presence of work equipment at home;" and (3) "the special circumstances of the particular employment that make it neces-

sary and not merely personally convenient to work at home," the premises of Smith should be deemed the premises of his employer as a place of employment while engaged in work growing out of and incidental to his employment.

At the time of the injury the electrical cord had been detached from the truck, the truck was unlocked, the day's route book was prepared and placed in the truck. Under these circumstances we believe Smith was not merely going to work—he was at work.

If Smith should be classified as a traveling salesman pursuant to sec. 102.03 (1) (f), Stats., we believe under all circumstances stated above that he commenced his trip when he left the house to enter the truck and that he (and his wife) had completely prepared for the day's trip and business activities. At the time in question there was no deviation from his employer's business for any purpose personal to Smith.[3] There was no office plant or starting place provided by his employer—he was on his employer's business trip when he left the house and when he was injured.

It is our opinion the department's findings and order to the effect that Smith was performing services incidental to his employment at the time of his injury and that the injury was one arising out of his employment are supported by credible evidence, and that as a matter of law the claimant is entitled to workmen's compensation awards.

*By the Court.*—Judgment reversed and cause remanded with directions to conform to the order of the department.

[3] *Richardson v. Industrial Comm.* (1957), 1 Wis. 2d 393, 84 N. W. 2d 98.