LARSON, Plaintiff-Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Defendant: COMBUSTION ENGINEERING COMPANY, and another, Defendants-Appellants.

*No. 75–285. Argued January 4, 1977.—Decided March 29, 1977.*
(Also reported in 252 N. W. 2d 33.)

For the appellant there were briefs by *Everson, Whitney, Everson, Brehm & Pfankuch, S. C.* and oral argument by *William S. Pfankuch,* all of Green Bay.

For the respondent there was a brief by *Kaftan, Kaftan, Kaftan, Kuehne & Van Egeren, S. C.* and oral argument by *Arthur Kaftan,* all of Green Bay.

CONNOR T. HANSEN, J.

David Nelson, an employee of the defendant-appellant, Combustion Engineering Company, (hereinafter employer) was injured on June 26, 1971, during the course of his employment. He died as a result of those injuries, on June 30, 1971. At the time that he sustained the injuries, Nelson was twenty-five years old, unmarried and survived by both parents.

The defendant-appellant, Travelers Insurance Company (hereinafter Travelers), was the employer's workmen's compensation insurance liability carrier. There is no dispute that Nelson's death was work related. Shortly after Nelson's death there arose some uncertainty as to the effect of a claim by Gale Shryock that Nelson was the putative father of an unborn child. The record is unclear as to how the claim arose or was communicated to the employer, Travelers or the Department. However, on September 15, 1971, the Department informed Travelers that "[t]he girl friend and her unborn child would not be considered dependents of a deceased employe under the workmen's compensation law. . . ." and that $2,000 death benefits would be payable to Nelson's parents. Travelers subsequently paid $2,000 to Nelson's parents pursuant to sec. 102.48(1), Stats.; $500 funeral expenses pursuant to sec. 102.50; and $11,000 into the state fund pursuant to sec. 102.49(5).

On June 6, 1973, the plaintiff-respondent, David Harley Larson, the alleged illegitimate child (hereinafter respondent) by his mother and general guardian, Gale Shryock, filed an application with the Department for death benefits under the Wisconsin Workmen's Compensation Act, arising out of the death of Nelson. The respondent alleged that he was ". . . the illegitimate child of the deceased, David Nelson, and was about 3 months in the womb when David Nelson was injured and died."

On June 13, 1973, the Department notified the respondent that on its face, the application presented a case of nonliability under the Workmen's Compensation Act. The respondent continued to pursue a claim for death benefits.

On August 21, 1973, the deputy administrator of the Department dismissed the respondent's application, without hearing, stating:

"That application for death benefit was filed with the Department on June 6, 1973; that the deceased, David W. Nelson, was not married at the time of his fatal injury on June 26, 1971; that the application alleges 'applicant is the illegitimate child of the deceased David Nelson, and was about three months in the womb when David Nelson was injured and died.' That assuming the facts as alleged in the application could be successfully established, applicant would not qualify as a dependent under the provisions of Wisconsin Statutes 102.51 and would not be entitled to a death benefit."

On August 25, 1973, the respondent petitioned the Department for review of the order of the deputy administrator pursuant to sec. 102.18(2), Stats.

On September 19, 1973, the Department issued an order affirming the August 21, 1973, order of the deputy administrator. On September 28, 1973, the respondent, pursuant to sec. 102.23, Stats., commenced an action in the circuit court for Dane county for review of the September 19, 1973, order of the Department on the grounds that:

(1) The Department acted without or in excess of its powers; and

(2) The findings of fact relied on by the Department did not support the order or award.

On April 14, 1975, the circuit court filed its memorandum decision and judgment in which it held that posthumously born children, whether legitimate or illegitimate, qualify as dependents under sec. 102.51(1), Stats. The circuit court reversed the September 19, 1973 order of the Department and remanded the matter for further proceedings. This appeal, brought by the appellant-employer, and Travelers, followed. Additional facts will be set forth in our discussion of the issue presented, which is:

Is an illegitimate posthumously born child, three months in the womb at the time of the fatal injury of

his alleged putative father, a dependent under the provisions of sec. 102.51, Stats., and, therefore, entitled to payment of a death benefit under the Wisconsin workmen's compensation law?

## SCOPE OF REVIEW.

The ILHR Department considered the respondent's application for death benefits as if it were a complaint to which a demurrer had been entered on the grounds that it failed to state a cause of action. Thus the facts were not in dispute and for the purposes of this appeal David Nelson is assumed to have been the father of the respondent.

The Department determined no questions of fact, but purported to determine a question of law, *i.e.*, under the assumed facts here presented, could the respondent qualify as a dependent for death benefit purposes under the workmen's compensation law? Such a question of law, involving, as it does, the statutory construction of various sections of the workmen's compensation law, was properly reviewable by the circuit court and by this court on appeal. *Consolidated Const. Co., Inc. v. Casey,* 71 Wis.2d 811, 816, 238 N.W.2d 758 (1976); *McGraw-Edison Co. v. ILHR Dept.,* 64 Wis.2d 703, 713, 221 N.W.2d 677 (1974); *Rohan Motor Co. v. Industrial Comm.,* 188 Wis. 223, 226, 205 N. W. 930 (1925); *Radtke Bros. & Korsch Co. v. Rutzinski,* 174 Wis. 212, 219, 183 N.W. 168 (1921). Since no question of fact was involved, neither the circuit court, nor this court on appeal are bound by the Department's determination. *Black River Dairy Products, Inc. v. ILHR Dept.,* 58 Wis.2d 537, 543, 207 N.W.2d 65 (1973); *Chamberlain v. Industrial Comm.,* 5 Wis.2d 411, 414, 92 N.W.2d 829 (1958);

*Schmidlkofer v. Industrial Comm.*, 265 Wis. 535, 538, 61 N.W.2d 862 (1953).

Although a question of law is involved in this appeal, two general rules recently restated by this court in *DeLeeuw v. ILHR Dept.*, 71 Wis.2d 446, 449, 238 N.W.2d 706 (1976), are applicable and deserve consideration:

"Our decisions have previously determined that whether certain undisputed facts constitute loss of employment because of a labor dispute presents a question of law. In reviewing such a question of law, this court does defer to a certain extent to the legal construction and application of a statute by the agency charged with enforcement of that statute. We are further guided by the rule of review under which, as to questions of law, we will not reverse a determination made by the enforcing agency where such interpretation is one among several reasonable interpretations that can be made, equally consistent with the purpose of the statute."[1]

Although the circuit court and the appellants in their brief framed the issue in this case as one involving both the element of illegitimacy *and* the element of posthumous birth, the appellants at oral argument clearly indicated that illegitimacy was not in issue. In so doing, the appellants' view of the critical issue was drawn into accord with that of the respondent.

It is clear under the decisions of this court that an illegitimate child can be a dependent qualifying for death benefits under the workmen's compensation law. *Zschock v. Industrial Comm.*, 11 Wis.2d 231, 105 N.W.2d 374 (1960); *Waunakee Canning Corp. v. Industrial Comm.*,

[1] *See also: Cook v. Industrial Comm.*, 31 Wis.2d 232, 240, 142 N.W.2d 827 (1966); *Tecumseh Products Co. v. Wisconsin E. R. Board*, 23 Wis.2d 118, 129, 130, 126 N.W.2d 520 (1964); *Milwaukee Transformer Co. v. Industrial Comm.*, 22 Wis.2d 502, 510, 126 N.W.2d 6 (1964).

268 Wis. 518, 68 N.W.2d 25 (1955). Any language to the contrary, drawn from this court's decision in *Kuetbach v. Industrial Comm.*, 166 Wis. 378, 165 N.W. 302 (1917), must be deemed to have been effectively overruled by *Zschock, supra,* and *Waunakee, supra.* The circuit court held that both legitimate and illegitimate posthumously born children could qualify as dependents. However, because of the position taken by both parties, the illegitimacy issue need not be addressed on this appeal.

Secs. 102.46 through 102.51, Stats., set forth the requirements for and provide for the payment of death benefits to persons wholly or partially dependent upon a deceased employee otherwise covered by the workmen's compensation law. Two critical features of the above sections are that no payments of death benefits are made except to persons who qualify as either wholly dependent or partially dependent upon the deceased employee for support, and that the status and degree of dependency are determined as of the date of the injury to the deceased employee.

Sec. 102.51 (2), Stats., sets forth, in a negative fashion, those classifications of persons, in terms of their relationship to the deceased, who may be considered dependents. Sec. 102.51 (2) (a), states:

"(2) WHO ARE NOT. (a) No person shall be considered a dependent unless a member of the family or a spouse, or a divorced spouse who has not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employe."

This court has consistently held that any person who falls within one of the above classifications may establish his dependency in fact, on the deceased employee, by competent evidence produced at a hearing before the Department. *Zschock, supra; Waunakee, supra; Krueger*

*v. Industrial Comm.*, 237 Wis. 158, 295 N. W. 33 (1941);
*Universal Foundry Co. v. Industrial Comm.*, 224 Wis.
311, 272 N.W. 23 (1937); *Kuetbach, supra.* The classifications set forth in sec. 102.51(2)(a), Stats., are exclusive. Unless a claimant falls within one of those classifications, regardless of his dependency in fact, he will not be entitled to qualify for death benefits.

Sec. 102.51(1), Stats., provides for a conclusive presumption of dependency, as follows:

"*102.51 Dependents.* (1) WHO ARE. The following shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employe: A wife upon a husband with whom she is living at the time of his death; a husband upon a wife with whom he is living at the time of her death; a child under the age of 18 years (or over said age, but physically or mentally incapacitated from earning), upon the parent with whom he is living at the time of the death of such parent, there being no surviving dependent parent. Where a dependent entitled to the presumption in this subsection survives the deceased employe, all other dependents shall be excluded. The charging of any portion of the support and maintenance of a child upon one of the parents, or any voluntary contribution toward the support of a child by a parent, or an obligation to support a child by a parent shall constitute a living with any such parent within the meaning of this section."

The conclusive presumption of sec. 102.51(1), Stats., applies to the degree of dependency which the spouse or child has upon the deceased *and* the fact that the spouse or child is a dependent. That is, the spouse or child meeting the criteria of sec. 102.51(1) is conclusively presumed to be dependent upon the deceased for support and to be solely or wholly dependent upon the deceased if living with the deceased as defined by the statute. The

conclusive presumption frees the spouse or child from establishing dependency and degree of dependency by competent evidence as is required of all other would-be dependents who fall within the classifications set forth in sec. 102.51(2), Stats. The conclusive presumption does not, however, free the spouse or child from establishing that they are in fact, spouse or child and that they were in fact "living with" the deceased at the time of his death under the terms of sec. 102.51(1).

While the conclusive presumption of sec. 102.51(1), Stats., affects the degree of dependency and establishes one's status as a dependent, it does not expand the category or classifications of those persons who may be considered dependents under sec. 102.51(2).

In *Kuetbach, supra,* and *Waunakee, supra,* this court held that sec. 102.51(1), Stats. (and a similar predecessor statute) dealt only with a conclusive presumption relating to the degree of dependency and that sec. 102.51 (1) could involve only persons who also belonged to one of the classifications described in sec. 102.51(2). In *Waunakee, supra,* this court stated at pp. 523–524:

"The very language of sec. 102.51(1) and (2), Stats., implies that there may be dependents eligible to death benefits other than such enumerated in sec. 102.51(1), and it is correct to infer that they are obliged to establish their dependency by evidence with reference to the facts. However, we are of the opinion that both groups, those who are conclusively presumed to be dependents and those who are obliged to establish their dependency by evidence, must qualify as belonging to a class described in sec. 102.51(2)."

In *Zschock, supra,* this court found the conclusively presumptive dependency of two living illegitimate children upon their deceased father based upon the "living with" language in sec. 102.51(1), Stats. The appellant there argued that the children (because they were non-

acknowledged illegitimates and not in fact part of the father's family) did not fit into any of the sec. 102.51(2) classifications and thus could never be dependents. This court did not agree, stating at p. 237:

". . . She [the appellant-widow] asserts that there may be people who qualify under sub. (1) of sec. 102.51 for the conclusive presumption of dependency but who are excluded by sub. (2). We do not agree. It would appear that when the word 'family' was used in sub. (2), it was intended that all children who would qualify under sub. (1) would be considered a part of the family, and when the legislature expanded the concept of 'living with' in sub. (1) in favor of a child outside the immediate household, it did not intend that the benefit conferred should be destroyed by sub. (2) by considering that child excluded from the family. We conclude that sub. (2) was intended to limit the class of those who are not entitled to the conclusive presumption of dependency, but who otherwise establish dependency in fact. The result reached in *Waunakee Canning Corp. v. Industrial Comm.* (1955), 268 Wis. 518, 68 N.W. (2d) 25, is consistent with our present conclusion. Certain statements in that opinion, however, are in conflict therewith, and to that extent are withdrawn. . . ."

Exactly what statements of *Waunakee, supra,* were to be withdrawn was unclear. If the decision in *Zschock, supra,* were to be interpreted as holding that sec. 102.51 (1), Stats., established a basis independent of sec. 102.51 (2), for granting a person the status of dependency, such a reading of *Zschock, supra,* would be in error. This court in *Zschock, supra,* went to considerable length to establish that the legislature could not have intended by the wording of sec. 102.51(2), to destroy the benefit accorded in sec. 102.51(1). Thus, this court held that the concept of "family" as used in sec. 102.51(2) must necessarily encompass the expanded concept of "living with" as used in sec. 102.51(1). This court considered sec. 102.51(1) and (2) together and it implicitly held that whoever qualified as a dependent under the former,

must also have been within one of the classifications set forth in the latter. This court looked at both subsections to determine who could be a dependent. Thus, the statement that ". . . sub. (2) was intended to limit the class of those who are not entitled to the conclusive presumption of dependency, but who otherwise establish dependency in fact. . ." and the withdrawal of "[c]ertain statements" in *Waunakee, supra,* should not be taken to mean that those persons entitled to the conclusive presumption under sec. 102.51(1) must not also be included in one of the classifications set forth in sec. 102.51(2).

To read *Zschock, supra,* as holding that sec. 102.51(1), Stats., establishes an independent basis for dependency would be contrary to the previous decisions in *Kuetbach, supra,* and *Waunakee, supra,* and would be inconsistent with a reasonable interpretation of the remaining pertinent section of the workmen's compensation law.

Section 102.51(4), Stats., provides:

"(4) DEPENDENCY AS OF DATE OF INJURY. Questions as to who constitute dependents and the extent of their dependency *shall be determined as of the date of the injury to the employe,* and their right to any death benefit shall become fixed as of such time, *irrespective of any subsequent change in conditions;* and the death benefit shall be directly recoverable by and payable to the dependents entitled thereto or their legal guardians or trustees; in case of the death of a dependent whose right to a death benefit has thus become fixed, so much of the same as is then unpaid shall be payable to his personal representatives in gross." (Emphasis added.)

If the status of dependency is to be established at the time of the injury under sec. 102.51(4), Stats., and if sec. 102.51(1), does indeed establish a new basis or classification for dependency outside of the classifications set forth in sec. 102.51(2), then the statutory provisions would be inconsistent. That would be so because the

critical time frame of sec. 102.51(4) is the time of injury, while that of sec. 102.51(1) is the time of death of the employee. Thus, there would be one set of dependents, *i.e.*, those under sec. 102.51(1), whose status as dependents would be determined as of the time of the death of the employee, and another set of dependents, *i.e.*, those under secs. 102.51(2) and (4), whose status as dependents would be determined as of the time of the injury to the employee.

The inconsistency and absurd results would be apparent in the following case: An employee was injured; then married; then died as a result of his injuries while "living with" his new wife. Under the clear provisions of sec. 102.51(4), Stats., because the wife was not a spouse at the time of the injury she could not be considered a dependent. But if sec. 102.51(1) established a new basis for dependency, the wife would be considered not only a dependent but a wholly-dependent dependent because she was "living with" the employee at the time of his death. One section of the workmen's compensation law would specifically exclude the wife as a dependent while the other would grant her a conclusive presumption of dependency. Statutes should not be construed to reach such unreasonable or absurd results. *Schwartz v. ILHR Dept.*, 72 Wis.2d 217, 240 N.W.2d 173 (1976); *Volunteers of America v. Industrial Comm.*, 30 Wis.2d 607, 141 N.W.2d 890 (1966).

The more reasonable interpretation is that all persons, in order to be considered dependents, must fall within one of those classifications set forth in sec. 102.51(2). Whether or not a person falls within one of those classifications is determined as of the time of the injury to the employee. Then if one of those persons within the sec. 102.51(2) classification is also a spouse or child of the deceased "living with" the deceased at the time of his

death under the provisions of sec. 102.51(1), they are accorded the conclusive presumption that they are wholly dependent upon the deceased for support. They are not classified as dependents because they fall within the sec. 102.51(1) criteria. They are classified as dependents because they fall within one of the sec. 102.51(2) classifications at the time of the employee's injury. Under sec. 102.51(1), they do not, in fact, have to establish their dependency and its degree because they were "living with" the injured employee at the time of his death.

This court followed just such an analysis in the *Kuetbach Case* when it determined the wife's rights to death benefits. There, at the time of the employee's injury, the employee and the wife were not married. They were subsequently married, however, and were physically living together as husband and wife at the time of the employee's death. This court, interpreting the predecessor statutes to secs. 102.51(4) and 102.51(1), Stats.[2]

[2] Sec. 2394–10, Stats. (1915), read in part, as follows:

". . .

"3. The following shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employe:

"(a) A wife upon a husband with whom she is living at the time of his death.

"(b) A husband upon a wife with whom he is living at the time of her death.

"(c) A child' or children under the age of eighteen years (or over said age, but physically or mentally incapacitated from earning), upon the parent with whom he or they are living at the time of the death of such parent, there being no surviving dependent parent. In case of divorce the charging of the full support and maintenance of a child upon one of the divorced parents shall be held to constitute a living with the parent so charged. In case there is more than one child thus dependent, the death benefit shall be divided between such dependents in such proportion as may be determined by the commission after considering the ages of such dependents and other facts bearing on such dependency.

"In all other cases questions of entire or partial dependency shall be determined in accordance with the fact, as the fact may be at the time of the accident to the employe; and in such other cases, if there is more than one person wholly dependent, the death benefit

held that the wife's status as a dependent, *i.e.*, as a spouse, must be viewed as of the time of the injury and not as of the time of the death. Thus, this court held that the conclusive presumption accorded by then sec. 2394–10 (3), Stats. (1915), did not operate to grant to the wife a new status as a dependent which she did not have at the time of the injury. This court stated at pp. 384, 385:

"It is strongly urged that sub. 3(a) [now 102.51(1)] creates a separate class of dependents and fixes the degree of their dependency, and that when the fact is established that the wife was living with her husband at the time of his death the fact of dependency and the degree of dependency are conclusively established in accordance with the provisions of sub. 3(a).

"Such a construction ignores the plain language of sub. 5 [now 102.51(4)]. So construed, sub. 3(a), (b), and (c) would be in the nature of exceptions to the provisions of sub. 5, and to that extent in conflict with it. Sub. 3 prescribes the method of determining the degree of dependency; sub. 4 limits the dependents to the classes of persons therein described; and sub. 5 prescribes the time as of which all questions relating to dependency and to

shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof; and if there is more than one person partially dependent, the death benefit shall be divided among them according to the relative extent of their dependency.

"4. No person shall be considered a dependent unless a member of the family of the deceased employe, or a divorced spouse who has not remarried, or one who bears to him the relation of husband or widow, or lineal descendant, or ancestor, or brother or sister.

"5. Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employe, and their right to any death benefit shall become fixed as of such time, irrespective of any subsequent change in conditions; and the death benefit shall be directly recoverable by and payable to the dependent or dependents entitled thereto or their legal guardians or trustees; provided that in case of the death of a dependent whose right to a death benefit has thus become fixed, so much of the same as is then unpaid shall be recoverable by and payable to his personal representatives in gross. No person shall be excluded as a dependent who is a nonresident alien. . . ."

the degree of dependency are to be determined. No claimant can bring himself within the provisions of the act except by establishing that he was on the date of the accident within the class of persons described in sub. 4. Having established that fact, if it further appears that he was within the provisions of sub. 3(a), (b), or (c), the degree of dependency is conclusively established, and in all other cases it must be proven and found in accordance with the fact as of the date of the accident. Such we think was clearly the legislative intent. . . ."

Thus the ultimate question on this appeal is not that posed and extensively discussed by both the appellants and the respondent in their briefs. The ultimate question is not whether at the time of his death, David Nelson had an obligation to support the respondent under the terms of sec. 102.51(1), Stats. A decision on that question presupposes the fact that the respondent fell within one of the sec. 102.51(2) classifications and a decision on that question would only determine whether or not the respondent would then be entitled to a conclusive presumption that he was solely and wholly dependent upon Nelson for support. The ultimate question is whether the respondent, on the date of Nelson's injury, fell within one of the sec. 102.51(2) classifications. That is, on June 26, 1971, was the respondent a ". . . member of the family or a spouse, or a divorced spouse who has not remarried, or lineal descendant or ancestor, or brother or sister of the deceased employe."

The appellants rely upon this court's decision in *Kuetbach, supra,* to support their contention that a posthumously born child cannot be a dependent under the workmen's compensation law. In *Kuetbach, supra,* the employee was injured in December, 1915. Prior to that time, a woman acquaintance, Etta, had become pregnant by the employee. On May 18, 1916, the employee and Etta were married; on June 5, 1916, the employee died as a result of the injuries; and on June 21, 1916, the child was born. Both Etta and the child applied for death

benefits. This court denied death benefits to Etta and the child.

The industrial commission argued against granting benefits to the child on the grounds that:

". . . he was not at the time of the accident a legitimate child *en ventre sa mere* [in the womb of the mother]; that no actual dependency could be proven on the date of the accident nor at the time of the death of the deceased, and that subsequent changes, such as the marriage of the deceased and *Etta Kuetbach,* could not enlarge the rights of the unborn child, inasmuch as the rights of all parties are to be determined, in accordance with sub. 5, as of the date of the accident. . . ." *Kuetbach, supra,* 381, 382.

As with the case of the wife's status as a dependent, this court did not base its decision on dependency on the "conclusively presumed" language of sec. 2394–10(3) [now sec. 102.51(1)]. Rather, this court determined whether the child fell within the classifications set forth in sec. 2394–10(4) [now sec. 102.51(2)], stating in *Kuetbach, supra,* at 384:

"We are not called upon in this case to determine what the result would be in case a man were lawfully married, his wife pregnant and living with him when he was injured, thereafter the child should be born, the wife should die, and later the husband should die. The question presented by this record is entirely different. Here there was no valid marriage at the time of the conception of the child and at the time of the accident the status of the child was not fixed. It might thereafter be made the legitimate child of the deceased by his subsequent marriage to *Etta Kuetbach,* but it certainly was not such on the day on which the accident occurred, as of which date all questions of dependency must be determined. In this case there was a subsequent change, to wit, the intermarriage of the deceased and *Etta Kuetbach,* and the statute expressly says that any subsequent change shall not alter the rights of parties, which are to be determined as of the date of the accident. To place any other construction upon this statute is to ignore and construe away the plain language of sub. 5. . . ."

The circuit court found that the *Kuetbach* decision did not make it clear whether it was the illegitimacy, the posthumous birth or both which was held to disqualify the child. Based upon the above cited language which stated what this court was not deciding in *Kuetbach, supra,* and upon the fact that even though *Kuetbach* was distinguished in *Waunakee, supra,* the latter case's implications on the subject of posthumous birth were *dicta;* the circuit court correctly concluded that *Kuetbach, supra,* was not *stare decisis* on the issue of posthumous birth.

Regardless of how one views the *Kuetbach, supra,* decision, it does not decide the ultimate question on this appeal; that is, whether the respondent on June 26, 1971, fell within one of the sec. 102.51(2), Stats., classifications.

This court has long held that a claimant for workmen's compensation benefits has the burden of establishing that he is entitled to those benefits. *Lager v. ILHR Department,* 50 Wis.2d 651, 185 N.W.2d 300 (1971); *Brickson v. ILHR Department,* 40 Wis.2d 694, 162 N.W.2d 600 (1968); *Forde v. Industrial Comm.,* 27 Wis.2d 663, 135 N.W.2d 340 (1965); *Rick v. Industrial Comm.,* 266 Wis. 460, 63 N.W.2d 712 (1954).

The respondent begins by asserting that he was both a lineal descendant of Nelson and a member of Nelson's family. The appellants assert just the opposite. It is clear that on the date of the injury, the respondent was but a fetus in the womb of his unwed mother. The question to be answered is whether such a fetus, under the terms of the workmen's compensation law, is to be considered a lineal descendant or a member of Nelson's family.

The classifications in sec. 102.51(2), Stats., on their face, imply application to living persons; that is, to persons who are alive and occupying the required relationships at the time of the injury to the employee.

The classifications set forth in sec. 102.51(2), have remained fairly static since the inception of the workmen's compensation law. Both the classification of family members and the classification of lineal descendants were in the original legislation.[3] A literal interpretation of sec. 102.51(2), Stats., would preclude including an unborn child within those classifications.

It is true that this court has generally adopted a liberal construction of the workmen's compensation statutes to accomplish their overall objectives of protecting injured employees and those who depend on such employees for support. *Neese v. State Medical Society*, 36 Wis.2d 497, 153 N.W.2d 552 (1967); *Grant County Service Bureau v. Industrial Comm.*, 25 Wis.2d 579, 131 N.W.2d 293 (1964); *Western Condensing Co. v. Industrial Comm.*, 262 Wis. 458, 55 N.W.2d 363 (1952); *Severson v. Industrial Comm.*, 221 Wis. 169, 266 N.W. 235 (1936). Furthermore, this court has held that the Act should be read in its entirety in order to ascertain the legislative intent. *Chilovi v. Industrial Comm.*, 246 Wis. 482, 17 N.W.2d 575 (1945); *Zarnott v. Timken-Detroit Axle Co.*, 244 Wis. 596, 13 N.W.2d 53 (1944); *Standard Oil Co. v. Industrial Comm.*, 234 Wis. 498, 291 N.W. 826 (1940); *In re Nagler*, 194 Wis. 437, 216 N.W. 493 (1927).

The general liberal construction rule is subject to one limitation, however, as noted by this court in *Frisbie v. ILHR Department*, 45 Wis.2d 80, 172 N.W.2d 346 (1969). Therein, this court stated at page 87:

"While workmen's compensation laws are to be liberally construed to effect the purposes of such legislation, court interpretation of a statute is not to be used as a device for repealing it or changing its obvious meaning. . . ."

---

[3] Sec. 2394–10(4), Stats. (1911), stated:

"4. No person shall be considered a dependent unless a member of the family of the deceased employe, or bears to him the relation of husband or widow, or lineal descendant, or ancestor, or brother, or sister."

The interpretation of lineal descendants has been judicially expanded to include both living legitimate and illegitimate blood related children. *Waunakee, supra;* *Zschock, supra.* Blood relationship has not been considered necessary to establish membership in a family under the statute, but such a family relationship implies a legitimate marital tie between a man and woman. *T. J. Moss Tie Co. v. Industrial Comm.,* 251 Wis. 57, 28 N.W.2d 884 (1947); *Duluth-Superior Milling Co. v. Industrial Comm.,* 226 Wis. 187, 275 N.W. 515, 276 N.W. 300 (1937); *Hall v. Industrial Comm.,* 165 Wis. 364, 162 N.W. 312 (1917); *Armstrong v. Industrial Comm.,* 161 Wis. 530, 154 N.W. 844 (1915). The court decisions expanding otherwise literal interpretations of the statutory classifications, have all been directed toward living persons.

Because the literal interpretation and obvious meaning of the sec. 102.51(2), Stats., classifications summarily exclude the respondent, he must turn to an interpretation of legislative intent. If the respondent is to meet the burden of establishing his entitlement to death benefits, he must do so by showing that the legislature intended that posthumously born children are to be included as dependents within the sec. 102.51(2) classifications. The respondent attempts to do so by resort to two other sections of the workmen's compensation law.

Sec. 102.51(1), Stats., grants the conclusive presumption of dependency. As has been stated, it does not itself establish a new classification of persons who may be considered dependents, but rather becomes operative only when a person has already established his status as falling within one of the sec. 102.51(2) classifications. If it can be said, however, that a person meets the criteria of sec. 102.51(1), then by necessary implication that person must also fall within one of the sec. 102.51(2) classifications in order that the general legislative intent be carried out. *Zschock, supra,* 237. That the respondent, in effect, relies on the foregoing reasoning is evidenced

by the fact that he attempts to place himself within the parameters of sec. 102.51(1).

As with sec. 102.51(2), Stats., sec. 102.51(1) has also been liberally interpreted by this court. The criteria of "living with" as applied to persons admittedly spouse or children of the deceased employee, was early interpreted to include all cases where there was no legal or actual severance of the marital relationship or family relationship, although there might have been a physical separation. The liberal interpretation applied to spouses who already fell within the sec. 102.51(2) classification. *Stojic v. Industrial Comm.*, 188 Wis. 228, 205 N.W. 795 (1925); *Belle City M. I. Co. v. Rowland*, 170 Wis. 293, 174 N.W. 899 (1919); *Northwestern Iron Co. v. Industrial Commission*, 154 Wis. 97, 142 N.W. 271 (1913). It applied equally to children who also fell within the sec. 102.51(2) classification of family member or lineal descendant. *C. F. Trantow Co. v. Industrial Comm.*, 262 Wis. 586, 55 N.W.2d 884 (1952); *Olson-Walker Co. v. Industrial Comm.*, 207 Wis. 576, 242 N.W. 350 (1932); *Milwaukee Western F. Co. v. Industrial Comm.*, 179 Wis. 223, 190 N.W. 439 (1923).

Subsequent legislative amendments to the original legislation, down to those which exist today, which provide that various degrees of support and maintenance of a child would serve to constitute a "living with" under sec. 102.51(1), Stats., further expanded the scope of those entitled to the presumption. This court's liberal interpretation and subsequent legislative amendments expanding the scope of those entitled to the presumption have been directed toward living persons.

Sec. 102.51(1), Stats., specifically now states that an obligation to support a child by a parent shall constitute a living with any such parent within the meaning of sec. 102.51(1). The respondent argues that on the date of the injury Nelson had just such an obligation to support the respondent.

Nelson's paternity is not here in question. Had the respondent been born at the time of the injury, there would have been no question that Nelson would have then had an obligation to support the respondent. That obligation would have flowed from the obligation of a father to support even an illegitimate child, which obligation is reflected in and serves as the basis for paternity proceedings set forth in sec. 52.21 through sec. 52.45, Stats. This court in *Zschock, supra,* 236, specifically declined to decide the question of whether the phrase "obligation to support a child" includes the obligation of a father to support an illegitimate child when the obligation has not been reduced to express terms by an adjudication or agreement. This court's earlier decision in *Shea v. Industrial Comm.,* 217 Wis. 263, 258 N.W. 779 (1935), however, had determined that an obligation to support a living son did not necessarily entail any adjudication.

The respondent here was not alive on the date of the injury. His future existence was obviously contingent upon his being born alive. Until that occurrence there was no obligation to support because there was no being to be supported.

The respondent, citing sec. 52.37(1), Stats., argues that Nelson did have an obligation to support him at the time of the injury. That section reads:

*"52.37 Judgment.* (1) If the defendant is found the father of the child, or admits the truth of the allegation, or enters into a settlement agreement, he shall be adjudged to be the father of such child, unless paternity is denied in such settlement agreement, and shall be ordered to pay all expenses incurred for lying-in and attendance of the mother during pregnancy, and also for the past care and support of the child, from the time of its birth until the date of the approval of the agreement or the entry of judgment. If the child is dead at time of trial he shall pay the expenses of the funeral and the expenses of the last illness. All payments and expenses stated herein shall be paid by the accused to a trustee, and the

settlement agreement or judgment shall specifically provide for the amount of disbursement and indicate the person to whom the trustee shall make such disbursement."

The respondent overlooks the fact that sec. 52.37(1), Stats., becomes operative after a defendant has been adjudicated to be the father of the child or after a defendant has admitted the truth of the allegations brought against him in legal paternity proceedings. Moreover, even if such an adjudication had occurred, sec. 52.37(1) is clear in its delineation of those expenses which will be assumed by the defendant. He will be ordered to pay ". . . all expenses incurred for lying-in and attendance of the *mother* during pregnancy . . ." (Emphasis added.) He will also be ordered to pay for ". . . the past care and support of the child, *from the time of its birth.* . . ." (Emphasis added.) The distinction is clear cut— the support of the *mother* in regard to pregnancy expenses *before* birth, and the support of the *child after* birth. The argument of the respondent that support of the mother during the lying-in period is, in effect, support of the child is too tenuous to have any merit in the face of the clear cut legislatively drawn distinction between mother and child, before and after birth, which is reflected in sec. 52.37(1).

The respondent next draws this court's attention to sec. 102.49(1), Stats., which provides for additional death benefits for children and which states in part:

"*102.49 Additional death benefit for children, state fund.* (1) Where the beneficiary under s. 102.46 or s. 102.47(1) is the wife or husband of the deceased employe and is wholly dependent for support, an additional death benefit shall be paid from the funds provided by sub. (5) for each child by their marriage living at the time of the death of the employe, and who is likewise wholly dependent upon him for support. Such additional benefit shall be computed from the date of the death of the employe as follows: For the child one year of age or under *(including a posthumous child),* a sum equal to $1\frac{1}{15}$ times the average annual earnings of the deceased employee. . . ." (Emphasis added.)

The above section specifically recognizes that for purposes of additional death benefits a "child" includes a "posthumous child." The purpose of sec. 102.49, Stats., was to spread the risk or loss in certain cases so as not to bear too heavily upon the individual employer. This court, citing *B. F. Sturtevant Co. v. Industrial Comm.*, 186 Wis. 10, 15, 202 N.W. 324 (1925), stated in *Schwartz v. ILHR Dept., supra,* 221:

" '. . . It [sec. 102.49, Stats.] recognizes that in the case of the death of an employee with a large family of small children, the compensation, in order to be adequate and equitable, must be much larger than in cases of dependency where only one person was dependent upon the deceased for support. . . .' "

The critical feature of sec. 102.49(1), Stats., is that it recognizes the need for additional benefits for children even though a spouse survives and even though sec. 102.51(1) would otherwise exclude them as dependents if the dependent spouse also survived and was living with the deceased at the time of his death.

In fact, sec. 102.49(4), Stats., specifically ties in the additional death benefits with the concepts of dependency as stated in sec. 102.51(1). As has been stated, that necessarily implies that there is also a tie in to the classification of dependents in sec. 102.51(2). Sec. 102.49(4), states:

"(4) Dependency of any child for the purposes of this section shall be determined according to the provisions of subsection (1) of section 102.51, in like manner as would be done if there was no surviving dependent parent."

Section 102.49(1), Stats., deals exclusively with the computation of additional death benefits to the spouse (who has already been determined to be a dependent) for the benefit of the child. *See* sec. 102.49(7). The very fact that the legislature saw fit to specifically add the provision for posthumously born children in the sec.

102.49 (1) computation[4] without making the same specific change in sec. 102.51 (1) or sec. 102.51 (2) or sec. 102.51 (4), indicates that the legislature specifically intended to limit the benefits flowing to posthumous children to the additional sec. 102.49 (1) benefits and to instances where the posthumously born child was survived by a dependent parent.

Since the legislature has clearly made the determination that posthumously born children shall be eligible to receive additional benefits but not primary benefits, that result, reflecting, as it does, public policy, can hardly be deemed to be absurd. Workmen's compensation is wholly statutory. Questions on what should properly be the public policy concerning it are determined by the legislature and not the courts. *Frisbie, supra,* 85; *Harry Crow & Son, Inc. v. Industrial Comm.,* 18 Wis.2d 436, 442, 118 N.W.2d 841 (1963). As this court stated in *Frisbie, supra,* 89: ". . . Where the pathway to recovery has been narrowed by legislation, it is the legislature which alone can broaden that pathway." *See also: Halama v. ILHR Department,* 48 Wis.2d 328, 332, 179 N.W.2d 784 (1970).

The fact that sec. 102.49 (4), Stats., relates to sec. 102.51 (1) means exactly what it says—". . . for the purposes of this section [102.49] . . ." Thus only for the purposes of sec. 102.49 will posthumously born children be amenable to the sec. 102.51 (1) concepts of dependency. Therefore, the benefits conferred by sec. 102.49 (1) are not negated by an interpretation of sec. 102.51 (1) and (2) which otherwise clearly excludes posthumous children from primary benefits.

Where the legislature has clearly limited the benefits which will flow to posthumous children under the workmen's compensation law, and where it appears that the Department, charged with the administration of that

---

[4] *See:* Laws of 1931, Chapter 403, sec. 53, effective July 8, 1931.

law, has applied it so as to preclude posthumously born children from qualifying for primary benefits, it is not for this court to change the obvious meaning of the law.

The Workmen's Compensation Act is a legislatively created substitute for the common law and is not merely supplemental thereto. Sec. 102.51(4), Stats., formerly sub. 5 of sec. 2394-10 (1915), is a legislative enactment which provides that questions as to ". . . who constitute dependents and the extent of their dependency shall be determined as of the date of the injury to the employe, and their right to any death benefit shall become fixed as of such time, . . ." In its wisdom, the legislature has seen fit to amend sec. 102.49(1) to provide additional death benefits for posthumous children of a dependent surviving spouse. We perceive the issue presented by the facts of this case to be one requiring a policy decision by the legislature and not one of judicial statutory construction. Many factors would necessarily require consideration in such a policy decision. Among them would be the effect, if any, of a paternity determination by the ILHR Department in any pending or subsequent probate proceeding.

Since this case deals with the provisions of the Wisconsin law and not with the varying workmen's compensation statutes of other states, the respondent's resort to out-of-state authority in this instance is not persuasive.

The judgment of the circuit court is reversed and the cause remanded, with directions for the circuit court to enter judgment affirming the order of the Department of Industry, Labor and Human Relations.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.

ABRAHAMSON, J. *(dissenting)*. I would affirm the judgment of the circuit court.

This case turns on the question whether the posthumously born "illegitimate child" was a dependent of the deceased within sec. 102.51(2), Stats., on the date of injury. The majority says it is applying a "literal interpretation" and finds that a child living at the time of injury falls within the category of lineal descendant in sec. 102.51(2), but that an unborn child does not. I think it more in keeping with the Worker's Compensation Act (nee Workmen's Compensation Act) to apply a familiar rule of construction, namely "relation back." In other areas of the law a person who is conceived and unborn (and then is born alive) is deemed to be in existence during the period of gestation for purposes of application of the particular rule. *Cf.* Bergin & Haskell, *Preface to Estates in Land and Future Interests,* 192 (1966). Thus I would find that the posthumously born "illegitimate child" is a lineal descendant alive at the time of injury.

The next step is to establish the dependency in fact of a posthumously born illegitimate child. Sec. 102.51 (1), Stats., provides a conclusive presumption of dependency if a parent has an obligation to support the child. The majority concludes that the father has no obligation to support the "illegitimate child" during gestation. The majority notes that sec. 52.37(1), Stats., requires payments for the mother's care during pregnancy but does not require support of the child until after birth. The majority labels as "tenuous" the argument that support of the mother during pregnancy is in effect support of the child. I find nothing tenuous about this argument. It is soundly based on biological fact. The majority notes that sec. 52.37(1) does not become operative until after an adjudication of or an admission of paternity, which may occur a substantial time after birth. Nevertheless the father's obligations and the amount of

his payments relate back to and are determined from the date of conception.

I have considered the legislature's expressly providing for secondary death benefits for posthumously born children in sec. 102.49 (1), Stats. Judge Currie has correctly interpreted the legislative intent. He wrote "There is no perceivable reason why a posthumous child should receive secondary death benefits under sec. 102.49 (1) and be denied primary death benefits under sec. 102.51 (1)."

Although the status of a posthumous child is specifically governed by the particular workmen's compensation statute adopted by the particular state, the interpretations that other states have placed on their statutes are helpful in considering Wisconsin law. Judge Currie in his memorandum decision referred to numerous textbook authorities and judicial authority of other states which support the conclusion that death benefits should be accorded to posthumously born children. *See,* Annot. *Workmen's Compensation: Posthumous Children and Children Born After Accident As Dependents,* 18 A.L.R. 3d 900 (1968); *Ide v. Scott Drilling,* 341 Mich. 164, 67 N.W.2d 133 (1954); *Shelley v. Central Woodwork, Inc.,* 207 Tenn. 411, 340 S.W.2d 896 (1960); *Green v. Burch,* 164 Kan. 348, 189 P.2d 892 (1948).

Given the liberal interpretation this court has generally accorded to the worker's compensation statutes and given the legislative design and purpose to compensate the dependents of deceased employees, I would hold that the legislature intended that a posthumously born illegitimate child could qualify as a dependent under sec. 102.51 (1) and (2), Stats.